459 So.2d 793 (1984)
Roger FAIRCHILD
v.
STATE of Mississippi.
No. 55158.
Supreme Court of Mississippi.
November 7, 1984.
Rehearing Denied December 12, 1984.
*795 Leon Mangum, W.H. Johnson, Jr., Decatur, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This case has exposed to us a slice of life we seldom encounter. A ne'er do well, a dope addict and a drifter  none of whose life experiences had been characterized by excessive regard for the norms and mores of society  met by chance and for a few *796 days pursued a drunken odyssey across the Southern United States. One died a violent death in Newton County, Mississippi. The other two, including the Appellant Roger Fairchild, now reside at the Mississippi State Penitentiary at Parchman under life sentences.
Our law has no less regard for the life of Joe T. Davis because he was a friendless drunk. One falls within the protections of our homicide statutes because he or she is a human being  nothing else is required. Nor are Timothy Lee Dickson and Roger Fairchild any less (or more) accountable for their actions because they appear to have lived their lives on the fringes of society.
In the case at bar, Fairchild has been lawfully convicted of the capital murder of Davis. He has been sentenced by the Circuit Court of Newton County to imprisonment for life. We have carefully reviewed the record, the assignments of error, and the briefs and arguments of counsel. We affirm.

II.

A.
On December 29, 1982, Joe T. Davis, age 50, was driving through Arizona on his way to Florida. His vehicle was a 1972 Ford van. Near Toletec, Arizona, Davis picked up a 23 year old hitchhiker named Timothy Lee Dickson who was en route to his home in North Carolina. Davis had been drinking beer prior to picking up Dickson. Afterwards, Dickson joined Davis in his beer consumption as the two traveled east on Interstate Highway 10  stopping only to maintain the van, to visit bars, and to buy more beer.
Roger Fairchild, the Defendant below and Appellant here, was a 42 year old drifter from Pennsylvania. On New Year's Eve, December 31, 1982, Fairchild was hitchhiking on Interstate Highway 20 near Longview, Texas. Davis stopped to pick him up. Dickson was still riding with Davis. Fairchild soon joined Davis and Dickson in their beer libations, as the three headed east on I-20.
According to Dickson, Davis had been "flashing" around a lot of cash. During a bathroom stop near Shreveport, Louisiana, Dickson told Fairchild that Davis had a lot of money and that he, Dickson, believed that he and Fairchild could "knock him out and rob him". Dickson testified that Fairchild agreed that this was a good idea. At a later stop, while looking for a bar, Dickson asked Fairchild if he had a knife. Fairchild responded affirmatively and handed Dickson his knife.
Thereafter that afternoon the trio located a likely looking "tonk" in Monroe, Louisiana. They stopped and again imbibed profusely. Several hours later they recommenced their journey east on Interstate Highway 20. At this time Dickson was drunk and driving, Fairchild was drunk in the front seat and sleeping, and Davis was drunk in the back of the van and sleeping. They continued in this fashion until sometime after they crossed the Mississippi River and entered the State of Mississippi.
Late on New Year's Eve Dickson was still driving and Davis and Fairchild were still sleeping. Dickson pulled the van off the road. According to his testimony, "I went back there and I started choking the man [Davis], and I pulled the knife out and stabbed him a couple of times." Dickson then took all of the money out of Davis' pockets and "as I started driving, I woke Fairchild up and told him it was done". According to Dickson, Fairchild responded that they should look for a bridge with some water in it. Fairchild then went to the back of the van and took rings, jewelry and travelers checks off of Davis, then returned to the front part of the van with Dickson.
Dickson testified that he had an agreement with Fairchild that they would split everything fifty-fifty. However, Dickson testified that he received $2,000 in travelers checks while Fairchild kept $3,000 for himself. They divided the two watches found on Davis' body and jointly spent the cash on beer and gas. Fairchild kept the rest of the jewelry.
*797 Shortly after Dickson killed Davis, they arrived at a bridge located in Newton County, Mississippi. According to Dickson, "I pulled off the road, and I opened the side door, and we both drug him out and threw him in the water, and got back in the van and took off".
On February 4, 1983  some five weeks later, Newton County Deputy Sheriff Robert Earl Dean discovered the body of a white male approximately 50 years of age near the marker for mile 102 on Interstate Highway 20. The body was found approximately 150 to 200 feet north of the highway in some bushes near a north running creek. It was clothed in a light brown sport-type jacket, light brown or tan pants, a flowery shirt, with the rear back pockets turned inside-out. The body was taken to Jackson where an autopsy was performed under the direction of Dr. Rodrigo Galvez, pathologist. The cause of death was massive internal bleeding from a stab wound to the heart.

B.
On March 24, 1983, Fairchild and Dickson were jointly charged with the capital murder of Joe Davis in an indictment returned by the Newton County Grand Jury. The indictment specifically charged that Dickson and Fairchild murdered Davis while they were engaged in the commission of the crime of robbery. Miss. Code Ann. § 97-3-19(2)(e) (Supp. 1983).
Immediately thereafter, the State entered into a plea bargain agreement with Dickson whereunder Dickson, on March 28, 1983, pled guilty to the separate crimes of murder and armed robbery. Upon these convictions, Dickson received sentences of life imprisonment and 35 years, respectively, the sentences to run consecutively.
On August 24, 1983, the case against Roger Fairchild was called for trial in the Circuit Court of Newton County, Mississippi. After hearing all the evidence and receiving the instructions of the Court and the arguments of counsel, the jury found Fairchild guilty of capital murder. Thereafter, the State put Fairchild to trial on the question of sentence. Miss. Code Ann. § 99-19-101 (Supp. 1983). At approximately 6:45 p.m. on August 25, 1983, the jury returned a verdict, to wit: "We, the jury, find the Defendant should be sentenced to life imprisonment." Immediately thereafter, the Circuit Judge imposed sentence in accordance with the verdict.
Thereafter, Defendant Fairchild, acting by and through his attorney, timely filed a motion for judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial. On September 2, 1983, the Circuit Court entered its order overruling these alternative motions. Fairchild now appeals to this Court.

III.

A.
On this appeal Fairchild first urges reversal on the asserted grounds that the verdict of the jury was contrary to the overwhelming weight of the credible evidence. Although he attacks the evidence in its entirety, a study of Fairchild's brief makes clear that his primary contention is that the State never proved that the body found in Newton County on February 4, 1983, was that of Joe T. Davis. The point is not well taken.
Fairchild's accomplice, Timothy Lee Dickson, testified that the $2,000 in travelers checks handed him by Fairchild were in the name of Joe T. Davis. Dickson also identified Davis' driver license as belonging to the person he killed. In addition, Dickson described the deceased as having been dressed in a brownish-like suit, pants and a flowery shirt  a description comparable to that given by Deputy Sheriff Dean of the clothing found on the body he discovered on February 4, 1983.
It is true that the State must prove that the person killed is one and the same person named in the indictment as having been killed. Duke v. State, 243 Miss. 602, 604-605, 139 So.2d 370, 371-372 (1962); Dooley v. State, 238 Miss. 16, 18-19, 116 So.2d 820, 821 (1960). In the case at bar, *798 we hold that the testimony regarding the name of Joe T. Davis on the travelers checks, the testimony regarding his drivers license and the matching testimony from Dickson and Deputy Dean regarding the clothing of the deceased are more than sufficient to enable a reasonable jury to conclude beyond a reasonable doubt that the person killed on December 31, 1982, and whose body was discovered on February 4, 1983, was one and the same Joe T. Davis the killing of whom has been charged in the indictment.

B.
Considering the evidence and the verdict more generally, we observe that there is in this record no evidence that Fairchild wielded the fatal blow at Davis, or any other blow for that matter. Still, Fairchild has been tried and convicted as a principal to the crime of capital murder, and this by virtue of Miss. Code Ann. § 97-1-3 (1972), which provides:
Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such,
... .
The evidence in this record is sufficient to establish that Fairchild participated in advance planning of the robbery of Davis, furnished Dickson the knife used in the murder, and that after Davis had been killed Fairchild took charge of dividing the "take" and assisted in disposing of the body. This is enough. Bullock v. State, 391 So.2d 601, 606 (Miss. 1980); Young v. State, 425 So.2d 1022, 1029 (Miss. 1983); White v. State, 330 So.2d 877, 879-880 (Miss. 1976); Jones v. Thigpen, 741 F.2d 805, 816 (5th Cir.1984).
To be sure, the evidence which produced the conviction from which Fairchild here appeals was provided by his co-indictee and accomplice, Timothy Lee Dickson. We have repeatedly recognized that a defendant may be lawfully convicted on the uncorroborated testimony of an accomplice, Gandy v. State, 438 So.2d 279, 285 (Miss. 1983); Jones v. State, 381 So.2d 983, 988 (Miss. 1980); Culberson v. State, 379 So.2d 499, 503 (Miss. 1979), although we frequently caution that such testimony should be viewed with suspicion and must be reasonable and not improbable, self-contradictory or substantially impeached. Mason v. State, 429 So.2d 569, 571 (Miss. 1983); Catchings v. State, 394 So.2d 869, 870 (Miss. 1981).
Because of its importance to this case, we have carefully reviewed the testimony of Timothy Lee Dickson. It is imprecise and vague at points. On the critical matter of the involvement of Fairchild in the murder and robbery of Davis, Dickson's testimony is credible. It is certainly not improbable or self-contradictory nor was it substantially impeached.
These preliminaries out of the way and looking at the evidence as a whole, we find that we must affirm.
Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983). When we apply this standard to the evidence in the record, we may only state that the trial judge correctly denied Fairchild's request for a peremptory instruction as well as his subsequent motion for judgment of acquittal notwithstanding the verdict of the jury.
The motion for a new trial is somewhat different. That motion is addressed to the sound discretion of the trial court. Neal v. State, 451 So.2d 743, 760 (Miss. 1984). When he moves for a new trial, a defendant in a criminal case necessarily invokes Rule 5.16 of our Uniform Criminal Rules of Circuit Court practice which in pertinent part provides:
Rule 5.16
New Trial
The court on written notice of the defendant may grant a new trial on any of the following grounds:

*799 (1) if required in the interest of justice;
(2) if the verdict is contrary to law or the weight of the evidence; ... .
Having due regard for the evidence recited at the outset of this opinion, we hold that the trial judge acted well within his discretion when he denied Fairchild's alternative motion for a new trial.

IV.
Fairchild argues that the trial court erred in overruling his motion for a directed verdict made at the close of the State's case on the grounds that the State had failed to establish venue in Newton County. The argument advanced by Fairchild seems to be that there is no credible proof where Davis was killed and, accordingly, there is an insufficient evidentiary predicate to establish venue in Newton County  or anywhere else for that matter, although it is clear without serious dispute that Davis was killed somewhere in the State of Mississippi. Carried to its logical extreme, Fairchild's argument would result in a homicide in Mississippi of which no county would have venue.
The body of Joe T. Davis was found in Newton County. The evidence offered by Deputy Sheriff Robert Earl Dean is sufficient to establish that the bridge Davis' body was thrown off of was likewise situated in Newton County. Timothy Dickson testified that, shortly after dumping the victim's body off the bridge, he and Fairchild stopped at a truckstop in Newton County to wash up and get something to eat. Dickson testified that he saw several state troopers. Larry Wayne Muse, an officer of the Mississippi Highway Patrol, testified that on New Year's Eve he saw Dickson and another man enter the truckstop, which Muse identified as being in Newton County.
Without doubt Fairchild had the right to be tried "by an impartial jury of the county where the offense was committed". Miss. Const. art. 3, § 26 (1890). He is correct when he reminds us that this Court has traditionally taken quite seriously the requirement that a criminal matter be tried in the proper venue. Clark v. State, 230 Miss. 143, 146-47, 92 So.2d 452, 453 (1957).
Venue, of course, may be proved by circumstancial evidence or inferentially. Sanders v. State, 286 So.2d 825, 827 (Miss. 1973). Of importance here is a legislative enactment on the subject, Miss. Code Ann. § 99-11-3 (1972)
The local jurisdiction of all offenses, unless otherwise provided by law, shall be in the county where committed. But, if on the trial the evidence makes it doubtful in which of several counties ... the offense was committed, such doubt shall not avail to procure the acquittal of the defendant.
See Phillips v. State, 177 Miss. 370, 374, 171 So. 24, 25 (1936); Hill v. State, 112 Miss. 375, 382, 73 So. 66, 67 (1916).
Under our law, the fact that Davis was found dead in Newton County raises a rebuttable presumption, or supports an inference, that all or part of the homicide took place in Newton County. Sanders v. State, 286 So.2d 825, 827 (Miss. 1973); State v. Fabian, 263 So.2d 773, 779 (Miss. 1972). Fairchild having offered nothing to rebut this presumption or make unreasonable the inference, we hold the evidence sufficient to undergird a finding that venue was proper in Newton County.
We note that the uncertainties raised by Fairchild regarding venue were the product of Dickson's unfamiliarity with Mississippi county lines coupled with his obvious state of intoxication at the time of the murder. These are the sort of uncertainties in the evidence which, section 99-11-3 directs, shall not avail to procure the acquittal of the defendant.
This assignment of error is without merit and must be denied.

V.

A.
Fairchild finally charges that the trial judge committed error when he refused to *800 charge the jury regarding two lesser-included offenses, murder and manslaughter.
The record reflects that Fairchild's attorneys requested Instruction No. D-24 which would have submitted the lesser-included offense of murder and Instruction No. D-25 which would have submitted the lesser-included offense of manslaughter. Each of these instructions was refused by the trial judge on the grounds that there was not a sufficient evidentiary basis in the record for granting either.
Our law is well-settled that jury instructions are not given unless there is an evidentiary basis in the record for such. Colburn v. State, 431 So.2d 1111, 1114 (Miss. 1983); Johnson v. State, 416 So.2d 383, 388 (Miss. 1982). Where under the evidence a reasonable jury could find the defendant not guilty of the principal charge made in the indictment but guilty of a lesser included offense, the trial judge ordinarily should instruct the jury regarding the elements of that lesser-included offense. Knowles v. State, 410 So.2d 380, 382 (Miss. 1982). Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984), expressly declares that, only where the evidence could only justify a conviction of the principal charge should a lesser included offense instruction be refused.
This rule is wholly applicable in prosecutions brought under this state's capital murder statute. Lanier v. State, 450 So.2d 69, 79-81 (Miss. 1984); see also, Hill v. State, 432 So.2d 427, 440-441 (Miss. 1983); Johnson v. State, 416 So.2d 383, 387-388 (Miss. 1982); In Re Jordan, 390 So.2d 584, 585-86 (Miss. 1980); Spencer v. State, 348 So.2d 1030, 1030 (Miss. 1977). Where the state seeks imposition of the penalty of death, the rule takes on constitutional proportions. Beck v. Alabama, 447 U.S. 625, 632-33, 100 S.Ct. 2382, 2387, 65 L.Ed.2d 392, 400 (1980); Hopper v. Evans, 456 U.S. 605, 611-12, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367, 373 (1982); Jackson v. State, 337 So.2d 1242, 1254-1255 (Miss. 1976).

B.
Looking first at the "simple murder" instruction  Instruction No. D-24  the trial judge refused that instruction because there was substantial evidence that the homicide was committed in conjunction with a robbery. In so holding, the trial judge appears to be echoing the view of the United States Court of Appeals for the Fifth Circuit expressed in Bell v. Watkins, 692 F.2d 999, 1004-1005 (5th Cir.1982) and Jones v. Thigpen, 741 F.2d 805, 816 (5th Cir.1984). That view in a nutshell is that, under Mississippi law, no murder committed during the course of a robbery can be simple murder. It becomes, by definition, capital murder under section 97-3-19(2)(e), or so the theory goes.
The theory is flawed. It determines what instruction will be granted at the request of the capital murder defendant on the basis of a presumption that he has already been found guilty of the underlying felony. The theory forgets that there is no such thing as a directed verdict of guilty in a criminal case, either on the principal charge in general or on any of its components. Its logic requires the determination that the proof offered by the State where not substantially contradicted must perforce be believed by the jury and so acted upon in their verdict. True, the evidence that Fairchild participated in a robbery in this case is substantial. What the trial judge has done, however  following the theory advanced by the Fifth Circuit  has been to find as a matter of law that Fairchild is guilty of robbery before the case is ever submitted to the jury. This constitutionally he has no authority to do.
The issue presented is whether the evidence in this case was such as to warrant the giving of an instruction on the lesser-included offense of simple murder. In applying the "if-the-evidence-warrants-it" test, we clearly do not ask which way the evidence preponderates  in favor of capital murder or the lesser-included offense. We likewise do not merely ask if there is sufficient evidence to sustain the jury's verdict *801 of guilty of capital murder. The answer to that question in this and other cases may be "yes" (as explained in Section III above) and there still be reversible error in not giving the lesser-included offense instruction. See Lanier v. State, 450 So.2d 69, 80 (Miss. 1984).
The correct test is this: Only if this Court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, and considering that the jury may not be required to believe any evidence offered by the State, that no hypothetical, reasonable jury could convict Roger Fairchild of simple murder, can it be said that the refusal of the lesser-included offense instruction was proper. Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984).
In a capital murder case, of course, all doubts should be resolved in favor of the accused. Gambrell v. State, 92 Miss. 728, 736, 46 So. 138, 139 (1908). On the other hand, a lesser-included offense instruction should never be granted on the basis of pure speculation, People v. Simpson, 57 Ill. App.3d 442, 448-49, 15 Ill. Dec. 463, 466, 373 N.E.2d 809, 812 (1978), as will be explained in Subsection C below.
The point is made in another way. If the trial court had given a simple murder instruction, and if the jury had then returned a verdict that Roger Fairchild was guilty of simple murder, the State could hardly argue that the evidence did not support such a conviction. In such an event, on appellate view, we would clearly have had to affirm on the sufficiency of the evidence issue. Because this is so, it follows that the simple murder instruction should have been given.
We hold that the trial judge's refusal to grant the simple murder instruction  Instruction No. D-24  was error. If at the sentencing phase the jury had returned the death penalty, reversal would have been required. Beck v. Alabama, 447 U.S. 625, 645-56, 100 S.Ct. 2382, 2393-94, 65 L.Ed.2d 392, 407-08 (1980); Lanier v. State, 450 So.2d 69, 79-81 (Miss. 1984).
In the case at bar, the jury found and determined that Fairchild should be sentenced to life imprisonment. If the trial judge had granted the simple murder instruction, as he ought to have, and if Fairchild had been found guilty of simple murder, the sentence would have been the same, to wit: "imprisonment for life in the state penitentiary". Miss. Code Ann. § 97-3-21 (Supp. 1983). Had the erroneously-denied instruction been given and, of course, had the jury elected to pursue the route it charted, Fairchild's lot would have been improved not one iota over that he drew. Under these circumstances, the refusal to grant the simple murder instruction was harmless error.

C.
The manslaughter instruction  Instruction No. D-25  presents a separate question. Here it appears that Defendant Fairchild was requesting that the jury be charged that it could consider the lesser-included offense of manslaughter, as that defense has been defined in Miss. Code Ann. § 97-3-35 (1972), although the instruction tendered does not precisely track the language of the statute.
This instruction would have presented to the jury the affirmative proposition that Fairchild's actions were "without malice aforethought" and presumably in the heat of passion. We find no evidence in the record from which a rational jury could conclude that Fairchild's actions constituted manslaughter, particularly in view of our established rule that voluntary intoxication is no defense in a criminal prosecution. Hall v. State, 427 So.2d 957, 961-962 (Miss. 1983); McDaniel v. State, 356 So.2d 1151, 1153-54 (Miss. 1978).
We emphasize the distinction between the situation presented by the requested manslaughter instruction and that discussed in Subsection B above regarding the murder instruction. The manslaughter instruction was correctly refused because a *802 manslaughter verdict could not on these facts have been reached solely by the jury's disbelieving a portion of the State's case. The jury could only have returned a verdict of manslaughter by finding affirmatively that Fairchild acted without malice aforethought and in the heat of passion, matters with respect to which there was no evidentiary basis in the record. Such matters may not be inferred. People v. Simpson, 57 Ill.3d 442, 448, 15 Ill.Dec. 463, 467, 373 N.E.2d 809, 813 (1978).
In the case of the murder instruction, the necessary affirmative findings  that Fairchild acted with malice aforethought and as a principal with Dickson  were undergirded by substantial evidence. The State obviously admitted as much when it requested and obtained submission to the jury of a capital murder instruction, one of the elements of which was murder. Malice or intent here, as a matter of law, may be proved or inferred from the use of a deadly weapon. Shields v. State, 244 Miss. 543, 548, 144 So.2d 786, 788 (1962). In order to defeat that inference, evidence must be offered to change the character of the killing. Hendrieth v. State, 230 So.2d 217, 219-20 (Miss. 1970). To return a verdict of murder, the jury would merely have had to determine that the evidence did not establish beyond a reasonable doubt that Fairchild participated in the robbery. Since all of the testimony came from Fairchild's scurrilous accomplice, we cannot say that a jury's negative determination of the robbery issue would have been irrational.
In short, the murder instruction should have been granted because all that was necessary for the jury to find Fairchild guilty of murder was that it disbelieve or find unconvincing a part of the State's proof. That instruction did not ask the jury to make an affirmative finding on an issue of ultimate fact where the record contained no supporting evidentiary facts. As explained above, asking the jury to make such a finding is the vice in the manslaughter instruction and the reason why it was correctly refused.
Our review of the evidence in this case makes it clear that the manslaughter instruction which was tendered by the Defendant in this case should not have been given. There is simply no evidence in the case  offered by the State or by the defense  which would change the character of the killing so that a reasonable jury could affirmatively find that the killing of Davis was manslaughter as defined in Section 97-3-35 or in any of our other statutes defining manslaughter. We hold that the trial judge did not commit error in refusing to submit this instruction to the jury.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.