Willie N. REDDIX, Petitioner-Appellant,

v.

Morris L. THIGPEN, Commissioner of the Mississippi Department of Corrections, Eddie Lucas, Warden, Mississippi State Penitentiary, Respondents-Appellees.

No. 86–4066.

United States Court of Appeals, Fifth Circuit.

Nov. 19, 1986.

Steven L. Winter, Coral Gables, Fla., Charles H. Ramberg, Jackson, Miss., for petitioner-appellant.

Marvin L. White, Jr., Asst. Atty. Gen., Edwin L. Pittman, Atty. Gen., Amy D. Whitten, Asst. Atty. Gen., Jackson, Miss., for respondents-appellees.

Before CLARK, Chief Judge, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case, in which the State of Mississippi sentenced appellant Willie N. Reddix to death, returns to us after we remanded to allow the district court to consider various issues it had not addressed. Our previous opinion granted Reddix habeas relief with respect to the penalty phase of his trial, but reversed the district court's grant of relief as to the guilt phase. On remand, the district court denied relief on all the issues it reconsidered, but consistent with our opinion granted relief unless the state resentenced Reddix or vacated his death sentence and imposed a lesser penalty. Reddix appeals the denial of the writ.

I

Since this is our third opinion in this case, *Reddix v. Thigpen*, 728 F.2d 705 (5th Cir.), *reh'g denied*, 732 F.2d 494, *cert. denied*, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984), we state only the facts and procedural history necessary to make clear the events that occurred after our prior opinions.

Nearly twelve years ago in Biloxi, Mississippi, Willie Reddix distracted the proprietor of a downtown store so that Larry Jones, Reddix's companion on that day, could sneak up behind the victim and kill him with repeated blows from a wrench. Reddix and Jones then took money and clothes from the store.

Reddix was tried and convicted of felony murder, but the Supreme Court of Mississippi reversed. *Reddix v. State*, 342 So.2d 1306 (Miss.1977). At a second trial, the jury reached the same result and sentenced Reddix to death. The Mississippi Supreme Court affirmed, *Reddix v. State*, 381 So.2d 999 (Miss.1980), and later denied Reddix's Petition for Writ of Error Coram Nobis.

Reddix then filed a federal habeas corpus petition. In an opinion that addressed all Reddix's contentions, the district court initially granted summary judgment to the state and denied Reddix partial summary judgment and an evidentiary hearing. The district court shortly thereafter responded to Reddix's motion for reconsideration by completely vacating its initial opinion and judgment above. *Reddix v. Thigpen*, 554 F.Supp. 1212 (S.D.Miss.1983). In an about-face, the district court not only granted Reddix habeas relief as to the death penal-

ty, under *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), but also granted relief from the murder conviction on the basis that the record did not show that Reddix had the required intent to commit murder. The district court ordered Reddix to be set free because he had already been adequately punished for his only crime: robbery.

In *Reddix I,* we reversed the district court's decision nullifying the conviction and setting Reddix free, and remanded for further consideration. We held, however, that the district court appropriately granted relief on the *Enmund* issue, and that the writ should therefore issue unless the state resentenced Reddix to a sentence less than death or resentenced Reddix under Mississippi law consistent with our opinion. Our holding was based on the failure of a trial court instruction to make clear that Reddix must have personally intended to kill, and we specifically held that a jury could reimpose the death penalty if it found that Reddix personally intended to kill. On rehearing, we adhered to our original opinion. *Reddix II.* In the meantime, the United States Supreme Court decided *Cabana v. Bullock,* —— U.S. ——, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), a Mississippi death penalty case concerning whether jury instructions properly required a personal intent to kill. The *Bullock* Court held that the instruction was erroneous, but that the requirement, drawn from the eighth amendment, that the defendant be found to have personally intended to kill, could be satisfied by findings by a judge as well as by a jury. Consequently, a federal habeas court must search the entire state record to determine whether, at any level, the proper finding of intent has been made. If it has, the finding binds us under *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). If the finding of intent · has not been made by either judge or jury, the *Bullock* Court indicated that, as a matter of comity, the state court should first be allowed to determine whether the petitioner personally intended to kill.

On remand to federal district court, the case was transferred to a different judge.

The second judge adopted the initial district court opinion on all issues except the *Enmund* issue. We summarize here, however, only those issues raised on this appeal, since the issues not raised are waived. *Smith v. Maggio,* 664 F.2d 109, 111 n. 2 (5th Cir.1981). The district court also considered a new contention, the voluntariness of Reddix's confession. Reddix contended before the district court that he was entitled to an evidentiary hearing based on a new affidavit from a psychiatrist that stated Reddix was so mentally retarded and mentally ill at the time he waived his rights that he could not have understood a *Miranda* warning and that he could have been persuaded to sign any statement he was given. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district court determined that this confession was voluntary, relying on the findings of the Mississippi Supreme Court. *Reddix v. State,* 381 So.2d 999, 1005–07 (Miss.1980). The district court held that the facts concerning Reddix's capacity had been sufficiently developed at trial to show that the failure of Reddix's counsel to raise the issue of Reddix's capacity to sign the waiver was the result of a deliberate bypass. Furthermore, the district court held that even considering the "new evidence," the record still supported a finding that Reddix understood the waiver, because the police explained it to him.

With respect to the instructions given to the jury during the guilt/innocence phase of the trial, the district court found that the state trial judge had correctly charged the jury on intent to rob, and further found that Mississippi law did not require such an intent for a robbery conviction or for murder in the course of robbery.

Reddix also challenged the instructions given to the jury at sentencing, although he had not objected to the instructions when given. The district court held that these instructions were not vague and that they adequately stated the requirement of intent to rob. It found that all Reddix's other objections to the sentencing instructions were procedurally barred because

they had been rejected by the Mississippi Supreme Court or had not been raised at trial.

The district court further held that the state trial court's rulings did not transgress *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), by rejecting Reddix's instructions on various lesser included offenses since the instructions requested were not supported by the evidence. It also held that its consideration of the issue was procedurally barred. Finally, in accord with our opinion on the *Enmund* issue, the district court conditionally granted the writ unless the state resentenced or vacated the death sentence.

## II

On appeal, Reddix argues that a *Beck* violation occurred when the state trial court denied his instructions on the lesser included offenses of noncapital murder, manslaughter and robbery. Furthermore, Reddix argues that he cannot be procedurally barred from raising this issue for failing to raise it on direct appeal. Reddix also argues that the jury was not properly instructed on one of the necessary elements of capital murder in the course of robbery: intent to rob. Finally, Reddix contends that he is entitled to a hearing and an independent federal determination on whether his waiver of rights and his confession were voluntary.

## III

### A.

We must first consider whether Reddix's argument that the state trial court erroneously failed to instruct the jury on lesser included offenses is procedurally barred, and, if not, whether Reddix's constitutional rights were violated by the rejection of his instructions.

■ In its finding on procedural bar, the district court relied on the fact that this point was first raised in the Petition for Writ of Error Coram Nobis to the Mississippi Supreme Court, not on the direct appeal to that court. Because of a recent case in our court, holding that during the period that included Reddix's appeal and petition for writ, the Mississippi Supreme Court did not consistently apply the rule barring consideration of claims presented for the first time in a writ of error coram nobis, we cannot hold that this issue is procedurally barred. *Wheat v. Thigpen,* 793 F.2d 621, 624–27 (5th Cir.1986). We therefore turn to the merits.

In the second trial, the state trial court refused Reddix's instructions on noncapital murder, manslaughter, and robbery. Reddix argues that the trial court's appreciation of when lesser-included-offense instructions should be granted did not comport with *Fairchild v. State,* 459 So.2d 793, 799–802 (Miss.1984). Reddix further argues that the refusal to grant the instructions placed Reddix in the same situation as the petitioner in *Beck.*

Fairchild was convicted of murder in the course of a robbery and sentenced to life imprisonment. At trial, the court refused Fairchild's instructions on simple murder and manslaughter. The Mississippi Supreme Court held that the refusal of the simple-murder instruction was error, but was harmless. It also held, however, that the refusal of the manslaughter instruction was proper.

The test fashioned by the Mississippi Supreme Court in *Fairchild* was, at first glance, familiar. "[J]ury instructions are not given unless there is an evidentiary basis in the record for such." *Fairchild,* 459 So.2d at 800. The court, however, further defined the standard as:

Only if this court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable, favorable inferences which may be drawn in favor of the accused from the evidence, and considering that the jury may not be required to believe any evidence offered by the State, that no hypothetical, reasonable jury could convict [the defendant] of simple murder, can it be said that the refusal of the lesser

included offense instruction was proper.... 

The point is made another way. If the trial court had given a simple murder instruction, and if the jury had then returned a verdict that [the defendant] was guilty of simple murder, the State could hardly argue that the evidence did not support such a conviction. In such an event, on appellate review, we would clearly have had to affirm on the sufficiency of the evidence issue. Because this is so, it follows that the simple murder instruction should have been given.

*Id.* at 801. The *Fairchild* court explicitly rejected *Bell v. Watkins*, 692 F.2d 999, 1004–05 (5th Cir.1982), and *Jones v. Thigpen*, 741 F.2d 805, 816 (5th Cir.1984) as incorrect explications of Mississippi law. To the *Fairchild* court, these cases improperly presumed that the defendant was guilty of robbery based on the evidence, and improperly assumed that the jury would believe the state's evidence. 459 So.2d at 800.[1]

Whether the *Fairchild* standard was correctly construed by the trial court is not properly before us; as a federal habeas court, we have no authority to review all misapplications of state criminal law. We "may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). We can grant Reddix relief on the basis of *Fairchild* only if the error is so egregious as to deny him due process, or if *Beck* somehow subsumes the *Fairchild* standard. *Cf., Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984) (evolution of state law in petitioner's favor does not warrant grant of writ).

*Beck* itself imposed no particular standard for the circumstances under which a lesser-included-offense instruction must be given. Strictly speaking, *Beck* holds only that a state cannot impose a blanket ban on the giving of lesser-included-offense instructions in a capital case. Mississippi clearly had no such ban at Reddix's second trial. *Jackson v. State*, 337 So.2d 1242, 1255 (Miss.1976). The *Beck* Court said, "Although the states vary in their descriptions of the quantum of proof necessary to give rise to a right to a lesser included offense instruction, they agree that it must be given when supported by the evidence." The *Beck* Court endorsed no particular standard, and by its silence appeared to accept the variation in standards. *Beck*, 447 U.S. at 637 n. 12, 100 S.Ct. at 2389 n. 12. *See also Hopper v. Evans*, 456 U.S.

---

1. *Fairchild* seems to be a significant, but unannounced, departure from established Mississippi law. The prior standard required that the lesser-included-offense instruction be given if a reasonable jury could find the defendant not guilty of the principal charge but guilty of the lesser included offense, and that it should be refused only when the evidence could justify a conviction solely on the principal charge. *Ruffin v. State*, 444 So.2d 839, 840 (Miss.1984); *Knowles v. State*, 410 So.2d 380, 382 (Miss.1982). Instead of viewing the evidence through the eyes of a reasonable jury, *Fairchild* would view the evidence through the eyes of a jury so skeptical that it may disbelieve all or any part of the state's evidence, no matter how uncontested or strong. The *Fairchild* standard is unusual because, rather than viewing the evidence as a whole, it appears that the trial judge must view the evidence bit by bit, and determine if some assemblage of those bits could justify a lesser included offense.

*Fairchild* also silently departs from established Mississippi law because, in presuming that the jury may totally reject the state's evidence, the lesser-included-offense instruction will almost always be required. Most sets of facts can be rearranged to support lesser included offenses if troublesome pieces of evidence can simply be ignored. Under such a standard, for example, Reddix could have been guilty of nothing; or he could have been guilty of shoplifting if the jury chose to believe only the state's evidence that Reddix possessed some merchandise, ignoring the practically undisputed evidence before the jury that he and Jones bludgeoned the victim and rifled the cash register.

Since the *Fairchild* court ultimately concluded that the refusal of the simple murder instruction was harmless error, and since the manslaughter instruction would have been properly refused under the prior standard of *Ruffin v. State*, 444 So.2d 839, 840–41 (Miss.1984), exposition of the new standard in *Fairchild* was unnecessary to decide the case and quite arguably is only dicta. Subsequent opinions of the Mississippi Supreme Court have cited *Fairchild* as the controlling case, but appear to rely on the prior reasonable jury standard rather than the "jury with blinders" test articulated in *Fairchild*.

605, 611–12, 102 S.Ct. 2049, 2052–53, 72 L.Ed.2d 367 (1982).

■ The federal standard, which clearly satisfies due process, "is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.'" *Id.* at 612, 102 S.Ct. at 2053 (quoting *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973)). Here, even though the evidence may have supported a jury finding that Reddix was guilty of shoplifting and therefore noncapital murder, a reasonable jury could not have acquitted him of robbery, considering the admitted plan, the killing and the taking of money. Miss.Code Ann. § 97–23–45 (1972). Since the instructions on a lesser included offense could properly be denied under a standard that satisfies due process, we hold that the state trial court's refusal of Reddix's lesser-included-offense instructions did not violate any of his federal constitutional rights.

### B.

■ Next we turn our attention to Reddix's contention that he was denied due process by the trial court's failure to instruct the jury specifically that intent is a necessary element of the crime of robbery. The state, however, has asserted that Reddix failed to object to the instruction and that our consideration of this issue is therefore procedurally barred. Reddix counters that the state has failed to raise this procedural bar at any previous stage in this case. Both sides are therefore arguing that the other has procedurally defaulted. The record shows that Reddix did not raise this claim on direct appeal. He did raise the claim on his Petition for Writ of Error Coram Nobis to the Mississippi Supreme Court, and the state did not argue that his failure to object constituted procedural bar or that his failure to raise the question on direct appeal constituted a procedural bar. We have already noted that, under *Wheat*, 793 F.2d at 624–27, Reddix's failure to raise an issue on direct appeal cannot be a

procedural bar as long as he raised it in the coram nobis proceeding. Reddix again raised the issue in his habeas petition, and the state did not assert his failure to object or raise the issue on direct appeal. Consequently, the state has waived this issue. *Wiggins v. Procunier*, 753 F.2d 1318 (5th Cir.1985).

Mississippi law does not require that an instruction explicitly state an intent to rob, because the word "rob" is presumed to carry the import of intent. *Eakens v. State*, 289 So.2d 687 (Miss.1974). For our purposes, however, the crucial question is whether the charge on this element deprived Reddix of due process. *Sandstrom v. Montana*, 442 U.S. 510, 516–17, 99 S.Ct. 2450, 2455, 61 L.Ed.2d 39 (1979).

A state prisoner seeking federal habeas relief for erroneous jury instructions faces a heavy burden:

> [I]t must be established not merely that the instruction [was] undersirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment, and that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

*Plunkett v. Estelle*, 709 F.2d 1004, 1009 (5th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984) (quoting *Washington v. Watkins*, 655 F.2d 1346 (5th Cir.1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982)).

The instruction in question reads:

> The Court instructs the Jury that the killing of a human being without the authority of law by any means or in any manner shall be Capital Murder when done with any design to effect death by any person engaged in the commission of the crime of robbery. The Court therefore instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt, that the Defendant, Willie N. Reddix, in company with another person, in the Second Judicial District of Harrison County, Mississippi, on or

about the time and date charged and testified about, went to Art's Levis, in Biloxi, Mississippi, and then and there take the personal property of one Arthur Weinburger, to-wit: clothing and valuables from his business, and against his will by violence to his person, and did then and there rob the said Arthur Weinburger of said personal property, and while so engaged in this design, the said Willie N. Reddix, acting in concert with another, struck the said Arthur Weinburger and killed him with an instrument, to-wit: a wrench, with the formed purpose to effect his death and as a result of said blows to the head, the said Arthur Weinburger died, and said murder was without justification or in necessary self-defense, then the jury shall find the defendant of Capital Murder.

█ Here, the only question is whether a reasonable jury could have understood that Reddix must have intended to rob Art Weinburger. Although the instructions that were delivered by the trial court could have been more explicit on this point, we are not an editorial board. Moreover, we must apply our common sense and consider the instruction in the context of the evidence of this case. It is clear to us that a reasonable jury would have plainly understood the instructions to require that Reddix had the intent to rob, because the instruction used the word "rob" and because it immediately specified that the killing must have been done "while so engaged in this design [to rob]." "Design" is a word of intention. Furthermore, the uncontradicted evidence left little doubt that Reddix intended to rob; indeed, whether Reddix intended to rob is not an issue in this case. Reddix specified that his brother did not know about the plan that he and Jones had made. Reddix said, "I kept talking to the [victim] to keep him from seeing [Jones]." Reddix ran to the door after Jones struck the victim in order to keep watch. Reddix opened the cash register. Jones and Reddix left the store separately; Jones carried the majority of the merchandise, and Reddix carried a black jacket. Since a reasonable jury would have understood the instruction to require intent to rob, and since there was no question that Reddix did intend to rob based on the evidence, we hold that the instruction given amply provided Reddix due process.

### C.

#### 1

█ The petitioner next contends that the state court's determination that his confession was voluntary must be subjected to an independent federal review. We agree. *Miller v. Fenton*, —— U.S. ——, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985). Independent federal review, however, does not ineluctably mandate an evidentiary hearing. The state court here considered and decided the constitutional issue presented— whether the petitioner's confession was voluntary.[2] The denial of the petitioner's motion to suppress was based on the merits and not on a procedural question. *See Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1963) (usually proper to assume ruling made on motion in original trial is based on merits and not procedural issue). The trial court, however, did not make express findings to support its conclusion of voluntariness. This court, however, has noted in *Guice v. Fortenberry*, 661 F.2d 496, 506 (5th Cir.1981), that although it is not always possible, it is appropriate to reconstruct the trial court's findings by reviewing the record in the light of the court's opinion where the record of the state court is orderly and intelligible. Unlike *Guice* where reconstruction of the record was impossible, here all the prerequisites to reconstruction are present: the law pertaining to voluntariness is clear and the presentation was

---

**2.** The court stated:
> O.K., gentlemen, I feel that I have the issues squarely before me on this limited hearing. It's the finding of the Court that the statement given by the Defendant is, in fact, a statement

knowingly, freely and voluntarily given by the Defendant. Based upon that ruling, the statement may be used for purposes during the trial.

made in an orderly and coherent fashion. We can therefore assume that the trial court applied the proper standard. *Guice,* 661 F.2d at 506.

The trial court's conclusion that the petitioner's confession was voluntary necessarily implies that "under the 'totality of the circumstances,' the statements [were] the product of the accused's 'free and rational' choice." *Martinez v. Estelle,* 612 F.2d 173, 177 (5th Cir.1980) (citing *Greenwald v. Wisconsin,* 390 U.S. 519, 520, 88 S.Ct. 1152, 1153, 20 L.Ed.2d 77 (1968)). It is with this in mind that we reconstruct the subsidiary findings of the trial court to be used in independently reviewing the voluntariness of Reddix's confession.

Reddix and the police officers testified that Reddix and Biloxi police officer Captain Florian Tichell met together on December 10, in Pascagoula where Reddix had been arrested on other charges. There Tichell asked for information regarding the death of Art Weinberger. Tichell and Reddix had known each other since Reddix was eight years old because they lived near each other. They met again on December 14 when Tichell, Al Hamilton and John Chester went to Pascagoula to arrest Reddix. Reddix was at that time informed of his rights and driven by the officers to Biloxi. No questioning or discussion of the case occurred during the trip. On December 15, Tichell asked Reddix if he wanted to make a statement. Reddix said that he did not, but might want to the next day. When Tichell approached Reddix the next day, Reddix said he was ready to make a statement. He would do so, however, only in the presence of Tichell. The other officer who was present, Charles Kriss, remained in the room while Tichell read and explained the *Miranda* warning and the consent to speak and waiver of rights form to Reddix. Reddix then stated that he understood his rights and appeared to read them himself although it was determined at trial that Reddix had limited reading ability

at that time. He then signed the waiver. Kriss left, leaving Tichell and Reddix alone in the room. After Reddix had given his statement and Tichell had written it, Kriss returned. Both officers asked if this were his voluntary statement, and upon Reddix's positive response, witnessed the statement.

These facts, which describe the context in which Reddix confessed, are basically undisputed. Reddix admitted that he was not threatened or coerced.[3] He agreed that Tichell read the *Miranda* warning to him when he was arrested on December 14, and again prior to his statement on December 16. Reddix also testified that he understood the warning and knew he had a right to a lawyer.

The only conflict of significance in the testimony relates to the content of the conversation between Reddix and Tichell on or about December 10 at the Pascagoula jail. Reddix testified that Tichell told him that Reddix's brother had been charged with capital murder and could be sent to the gas chamber. Tichell stated that he told Reddix only that his brother was involved and asked if Reddix knew anything that would help. Tichell denied mentioning capital murder or the gas chamber, stating that such would have been a threat, and he did not threaten Reddix. Tichell's testimony was corroborated by that of Sergeant John Chester who accompanied Tichell to Pascagoula. For the trial court to have concluded that the confession was voluntary, it necessarily believed Tichell's statement and disbelieved Reddix. We are bound by this subsidiary factual finding. *See Miller,* 106 S.Ct. at 451.

In conducting our independent federal review, we have then a defendant who had been advised of his rights and who, after several requests, volunteered to make a statement to a police officer who was an old friend of the family. Before making the statement, however, he was again advised of his rights and he stated at trial that he understood at that time that he had

---

3. Reddix's attorney argued that Reddix did not understand these words. "Coerce" was explained to Reddix at the hearing, and Reddix

defined "threat" as "somebody take you and say, 'I am going to kill you if you don't do something.'"

a right to a lawyer. He then gave the statement which was used against him at trial, fully implicating himself in the robbery and murder. Looking at the totality of the circumstances, we are persuaded that Reddix's confession was voluntary. Our conclusion is buttressed by Reddix's own testimony that the reason he made the statement was to exonerate his brother who was a suspect.

A. [Reddix]. The only reason that I gave him the statement was to free my brother from—inaudible—

THE COURT REPORTER: Was to free your brother from what?

THE WITNESS: To free my brother from a lie that they had put on him. He wasn't involved in it.

. . . .

BY MR. NECAISE: Q. You gave—not because of any promises, not because of any threats, not because of any forces— because you didn't want your brother to get blamed for something he didn't do. Isn't that right?

A. Yes sir.

. . . .

Q. And so you gave this statement not because of any promises, not because of any threats, not because of any coercion, not because of any force used upon you, but you gave it because you did not want your brother to be charged with the crime that he was not guilty of. Isn't that right?

A. Yes, sir.

. . . .

Q. You were going to take the blame for this crime. You were going to take the chance of going to the gas chamber to keep your brother from going.

A. Sure.

Q. You would go rather than see your brother go.

A. Yes, sir.

Hence, based on our independent review, we must conclude that Reddix's confession was the result of a voluntary decision to clear his suspected brother,[4] and it was untainted by inherently coercive police conduct or other factors which, as applied to *this* suspect, were incompatible with our system of justice. *See Miller*, 106 S.Ct. at 450.

**2**

■ The petitioner also contends that he is entitled to an evidentiary hearing to adduce additional testimony on his intelligence level and psychological condition at the time of his confession. Under *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), a federal habeas petitioner is entitled to an evidentiary hearing in certain circumstances if "at a minimum, the habeas corpus applicant alleges facts which, if proved, would entitle him to relief." *Cronnon v. State*, 587 F.2d 246, 249 (5th Cir.), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979). Here the petitioner's alleged facts are contained in the affidavit of Clifton Davis, a psychiatrist. Davis examined Reddix on March 3, 1975, approximately three months after his confession, and determined that Reddix suffered from mental retardation with psychosis. According to Davis, the psychosis made Reddix vulnerable to outside influences and easily led; his mental retardation prevented him from understanding the *Miranda* warning and contributed to the alleged vulnerability. The petitioner contends that these facts would alter the "totality of the circumstances" sufficiently to compel a trier of fact to conclude that his confession was not voluntary. We disagree.

■ The facts stated in Davis's affidavit at best merely conflict with Reddix's testimony. Reddix stated that he understood his rights, knew that he could ask for

---

**4.** The text of the confession reflects Reddix's intent to clear his brother in its numerous references to his brother's lack of knowledge and involvement. "J.D. Reddix was not there at this time. He did not know anything about the plan.... J.D. Reddix did not get out of the car.... J.D. was still in the car.... J.D. did not ask us where we had been or where we got the things from.... All J.D. got was the coat I gave him[.] We did not tell him what we had done."

a lawyer and was not threatened or coerced to make the statement. Our review is, of course, not limited to consideration of whether the police conduct was "inherently coercive," which it obviously was not; we must also determine whether "in the particular circumstances of the case, the confession is unlikely to have been the product of a free and rational will." *Miller*, 106 S.Ct. at 450. Although Davis's affidavit addresses Reddix's particular circumstances, it does not necessitate an evidentiary hearing in order for us to properly evaluate it in the context of the totality of the record before us. Reddix himself testified that he confessed to protect his brother, and because he would rather accept the consequences himself. From that testimony, made when all agreed that Reddix was competent to stand trial and assist his counsel in his defense,[5] we can only conclude that Reddix was fully aware of his action and the probable result of confessing.[6] In the light of that knowledge, we must conclude that he made a "free and rational" decision to confess. *See Greenwald v. Wisconsin*, 390 U.S. 519, 521, 88 S.Ct. 1152, 1153, 20 L.Ed.2d 77 (1968).

A review of the facts further supports our conclusion that Reddix's decision was rational and based on reasoned choices. When he met with Tichell on December 10,

he denied possessing any knowledge that would be of help to his brother; when arrested, Reddix again refused to give a statement. Only after having the time to think about the situation and his alternatives did he confess. His motive—to exonerate his innocent brother—was rational, showing an appreciable choice of moral courage. It shows that Reddix reasoned that since the police suspected his brother, they had little information regarding the participants and actual perpetrator of the crime. That Reddix confessed his participation in the act further demonstrates his understanding of the situation—his statement had the desired and reasonably expected effect of drawing suspicion away from his brother.

▮ Davis' affidavit also fails to raise any questions regarding Reddix's ability to understand the *Miranda* warning.[7] The record shows that Reddix had been arrested a number of times previously and had been read his rights each time. At the time he confessed in this case, he had been read the *Miranda* warning at least three times in as many days. The record also shows that Reddix, by his own admission, understood his right to have a lawyer, and understood the meaning of a threat. Although his definition of "threat" might not be of "Webster preciseness," it does show

---

**5.** Reddix does not contend that he was incompetent to stand trial. To be competent to stand trial, a defendant must possess "sufficient present ability to consult with his lawyer with reasonable degree of rational understanding—and ... a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). We have reasoned that the *Dusky* test requires that a defendant have "the present mental ability meaningfully to participate in his defense." *Johnson v. Estelle*, 704 F.2d 232, 237 (5th Cir. 1983), *cert. denied sub nom. Johnson v. McKaskle*, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984). In Dr. Davis's opinion, Reddix's mental retardation did not prevent his being competent to stand trial.

**6.** An effective waiver of *Miranda* rights requires an awareness of both the nature of the right and the consequences of the waiver. *Moran v. Burbine*, — U.S. —, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). The Supreme Court, however, has "not held that the *sine qua non* for a

knowing and voluntary waiver of the right to remain silent is a full and complete appreciation of all of the consequences flowing from the nature and the quality of the evidence in the case." *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 1297–98, 84 L.Ed.2d 222 (1985).

**7.** A typical *Miranda* warning is as follows:

You have the right to remain silent. You do not have to say anything to us at any time or to answer any questions. Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.

If you cannot afford a lawyer and want one, a lawyer will be provided for you.

If you want to answer questions now without a lawyer present you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

that he was capable of understanding the simple meanings of simple words and applying them to his real-life situation. That he was able to do so when read the *Miranda* warning is made clear from his own testimony. In the light of the foregoing, there is no requirement that any further hearing be conducted to determine the voluntariness of Reddix's confession.

### IV

■■■■ The state has argued that we should not remand to the state court in the light of *Cabana v. Bullock*, — U.S. —, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), because in *Reddix II*, 732 F.2d at 494, we have already found that Reddix personally intended to kill. First, the state has not filed a cross-appeal, so it cannot attack the judgment. Second, since the Mississippi courts did not find that Reddix had a personal intent to kill, *Bullock* actually commands exactly the relief that we awarded: allowing the state court to address the question in the first instance. *Id.* at 699. Our mention of a jury hearing on remand to the state courts should not be taken to require a jury determination of this issue, however. *Id.* at 700. *Reddix I* requires no further modification in the light of *Bullock*, and the district court correctly implemented our decision.

### V

For the reasons stated above, the judgment of the district court is

AFFIRMED AND REMANDED FOR ENTRY OF JUDGMENT.