BANKS, Justice,
dissenting:
Once again I am compelled to dissent because of what I view as an unconstitutional *814 handling of the venue issue in this and companion cases. See Simon v. State, 633 So.2d 407, 413 (Miss.1993) (Banks, J., dissenting), vacated, — U.S. —, 115 S.Ct. 413, 130 L.Ed.2d 329 (1994); Carr v. State, 655 So.2d 824 (Miss.1995) (Banks, J., dissenting). In short, I believe that in changing venue a trial court is compelled to take into account the racial composition of the alternate venue. Additionally, in the instant case, the situs of the trial was as or more permeated with the adverse publicity that prompted the original request for a change of venue and defendant’s second request for a change of venue or in the alternative to revoke his original request for a change of venue should have been honored.
I.
Here, as in the other eases arising out of this horrendous crime, venue was changed from Quitman County because pretrial publicity, some of which was wrongfully generated by state, made it presumptively impossible to secure a fair trial there. Simon I, 633 So.2d at 411. In this case, as in the others, the trial court refused to consider defendant’s request to have the trial in a county of similar racial characteristics. Here, as in the other eases, the ultimate trial site was drastically different in racial composition from the site of the crime. DeSoto county has a 15% black population compared to Quitman county’s 54%. The venire from which the jury was chosen here was less than 9% (9 of 105) black. Sixty-two of the 82 counties in Mississippi have higher black population than De-Soto county.
The majority suggests that Simon is “forum shopping”. On the contrary, Simon simply suggests the consideration of a criteria to inhibit and correct an otherwise unfettered venue selection process which had the potential to and did, in effect, systematically exclude members of his race from the venire. To the extent that this is “shopping” it is not, in my view, to be frowned upon. It is, instead, the exercise of a strength at least equal to that of seeking a forum untainted by adverse pre-trial publicity.
For the reasons more fully stated in my dissents in Simon I and Carr, I believe that the transfer of a ease such as this to a county drastically different in racial composition, absent a compelling reason to do so, is an unconstitutional deprivation of the right to be free from systematic exclusion of members of one race from the trial jury and the right to a jury drawn from a fair-cross section of the fair cross-section of the community. Id. See Simon v. State, 633 So.2d 407, 413 (Miss.1993) (Banks, J., dissenting); Carr v. State, 655 So.2d 824 (Miss.1995) (Banks, J., dissenting).
II.
The choice of venue in the instant case has the added defect of such close proximity to the site of the crime as to suffer from the same saturation of publicity. DeSoto County is one county removed from Quitman County and adjacent to Memphis, Tennessee, the site of the primary media outlets serving the area. The area was saturated with coverage of Simon’s first trial and that of his co-defendant Carr the month before. Carr’s trial was held in Corinth, which is well within the Memphis media market; The record reflects testimony that one or more articles appeared in the Memphis Commercial Appeal, the predominant newspaper in the area, every day for the one-month period preceding the trial. Reports included inflammatory and inadmissible information including accusations that Simon was responsible for a number of other violent crimes and interviews with his wife concerning the crime in question.
It is not surprising, then, that 52 of the approximately 84 venire members available at the time (21 of the 105 had previously been excused for cause), responded that they had heard something about the case. Sixteen of these admitted that they had formed opinions and all but two of those further admitted that they could not set those opinions aside. Some of those who had heard about the case served on the jury. Simon’s request for additional challenges was denied.
The substantial and adverse publicity rivals or exceeds that in any of the cases where we have had to consider this issue. See e. g., Fisher v. State, 481 So.2d 203 (Miss.1985); Lutes v. State, 517 So.2d 541 *815 (Miss.1987). I would hold that Simon was entitled to another change of venue from DeSoto county to a county “substantially outside the coverage area”, or in the very least, a delay in his trial because pre-trial publicity had rendered the of a fair trial by an impartial jury doubtful. Fisher v. State, 481 So.2d at 223.
III.
The defendant has right to be tried in the county where the offense occurred. Fairchild v. State, 459 So.2d 793 (Miss.1984); Miss.Code Ann. § 99 — 11—3; Miss. Const. Art. Ill, § 26. As with other rights this one is subject to waiver. Simon contends that his was a conditional waiver. That is he waived his right to a trial in Quitman county conditioned upon a choice of venue with a racial make-up comparable to that in Quitman county. Moreover, the basis for the change, pre-trial publicity, further conditions the waiver, implicitly, upon a selection of venue where that factor could be deemed diminished. Neither condition was met here.
While we have not dealt with a “conditional” waiver of a constitutional right, we have treated a revocation of waiver of the right to venue. State v. Caldwell, 492 So.2d 575 (Miss.1986). In Caldwell this Court held that waiver of right to be tried in the county of the offense may be reinvoked after a the result of the first trial has been reversed. Id. Caldwell dealt with a new trial on sentencing only. Because of that this Court took pains to point out that revocation of waiver at the sentencing phase of an ordinary bifurcated proceeding would not be in order. Id. at 577. That is not the case here. Simon reasserted his right to be tried in the county of the offense prior to trial. Given the fact that Simon had conditioned his waiver from the beginning and the fact that the justification for the change of venue, pretrial publicity, was not cured by the moving to DeSoto County, it was an abuse of discretion to fail to honor Simon’s assertion of his right to be tried in Quitman County.
SULLIVAN, P.J., joins this opinion.