589 So.2d 116 (1991)
Billy Earl ROBINSON
v.
STATE of Mississippi.
No. 90-KA-0458.
Supreme Court of Mississippi.
November 6, 1991.
William M. Frisbie, Indianola, for appellant.
Mike C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and BANKS, JJ.
*117 DAN M. LEE, Presiding Justice, for the Court:
Billy Earl Robinson was tried in the Circuit Court of Washington County, on a two-count indictment for attempted rape and burglary of a dwelling. He was acquitted on the attempted rape count, but convicted on the burglary of a dwelling count, and sentenced to five years in the custody of the Department of Corrections. Feeling aggrieved, he appeals to this Court, assigning two errors, viz:
1. Whether the trial court erred in not granting defendant's motion for a directed verdict, his request for a peremptory instruction for acquittal, and his motion for a judgment of acquittal notwithstanding the verdict.
2. Whether the trial court erred in not granting defendant opportunity to present lesser included offense instructions.
As the first assignment of error is without merit, we directly turn to the second assignment and find that the testimony heard at trial provided an evidentiary basis for a finding that Robinson's actions on this fateful April 22, 1989, could well have constituted a trespass rather than a burglary, thereby entitling him to an opportunity to present a lesser included offense instruction. Accordingly, we reverse the conviction and remand for a new trial.

I.
The facts of this case are not complex, but they are greatly disputed. The alleged victim, J.M.[1], testified that on April 22, 1989, she went outside her home, and onto her front porch, where she saw Robinson, with whom she was casually acquainted. Without her knowledge or consent, Robinson entered her house, and J.M. did not learn of his entrance until she heard a noise from inside the house, and, when she went to investigate, she found him coming out of her bathroom. Upon seeing Robinson, J.M. told him to leave; however, rather than leaving, Robinson threw her onto a bed and told her that they were going to have sexual intercourse.
J.M. struggled with Robinson on the bed, and he only released her when he became distracted by the crying of one of her children who had been left on the front porch. J.M. and Robinson then left the house and walked onto the porch, whereupon Robinson told her he had inadvertently left some money inside. She told him to wait outside, while she got the money for him, and she went back inside the house, quickly closing and locking the door behind her. Rather than waiting, however, Robinson kicked in the door and entered the house a second time. Again they struggled, and Robinson managed to pull off the jogging pants J.M. wore under her nightgown, but she continued to struggle with him, and eventually he gave up attempting to rape her, and left her house. She then called her neighbor and the police.
J.M.'s neighbor, Roy Cartwright, testified to a somewhat different scenario. While his testimony agreed with J.M.'s that Robinson entered the house two times, he said J.M. voluntarily let Robinson enter the first time. J.M. and Robinson then came back outside onto the porch, and, shortly thereafter, J.M. went back inside, leaving Robinson alone on the porch. Robinson then kicked in the door and followed her inside.
Robinson testified to yet a third scenario. He and J.M. were once romantically involved, and, while their relationship had ended on somewhat bitter terms with persistent hard feelings, she was still romantically interested in him, but he was no longer interested in her. On the day in question he was simply walking by J.M.'s house, whereupon he and J.M. entered into a light conversation, but this conversation rapidly turned into a heated argument. At first, Robinson denied ever going into the house, but he later appeared to recant this denial, and said he entered the house; however, he consistently denied having kicked *118 in the door. Robinson's account was somewhat bolstered by another witness's corroborating the past romantic involvement.

II.
The contention on appeal is that Robinson was entitled to a lesser included offense instruction of trespass on the burglary charge. During discussion concerning jury instructions, Robinson's attorney asked, "Are we going to be allowed to have a lesser included instruction. We didn't include any, but I wasn't expecting it to ." The judge replied:
[w]ell, I don't see how we could have a lesser included. Your man [Robinson] said it did not happen. He doesn't say, well, I eased on in the door while it was wide open, and she [Ms. Moore] was talking to me, and I asked her for a little, and she wouldn't give me any, and we got into a little tussle. If that had been in the testimony, I think you would have been entitled to it, but here he says he didn't touch her, and he didn't go in her house. So, I don't believe under his testimony I can very well give a lesser included offense instruction.
Robinson's attorney replied, "[w]ell, if the jury happened to believe that it didn't happen just exactly her way and didn't happen just exactly his way ." The judge stated:
[i]f they [the jury] don't believe either one of them, then they need to find him not guilty, because the State would have failed to meet its burden of proof in that case. They've got to believe her, period, to convict him. If they don't believe her, that's the end of it, or should be. They will believe her or don't.
Therefore, the Court effectively refused to give a lesser included offense instruction. This ruling is the equivalent of presenting an instruction for purposes of preserving the point for appeal.

III.
For a trial court to properly deny a lesser included offense instruction, the evidence, viewed in a light most favorable to the defendant, could allow no hypothetical juror to find the defendant guilty of the lesser included offense. Graham v. State, 582 So.2d 1014 (Miss. 1991); Gangl v. State, 539 So.2d 132, 136 (Miss. 1989); Mease v. State, 539 So.2d 1324, 1329-30 (Miss. 1989); Whitehurst v. State, 540 So.2d 1319, 1327 (Miss. 1989); Armstead v. State, 503 So.2d 281, 285 (Miss. 1987); Harper v. State, 478 So.2d 1017, 1021 (Miss. 1985); Ruffin v. State, 444 So.2d 839, 840-841 (Miss. 1984); Fairchild v. State, 459 So.2d 793, 801 (Miss. 1984). However, a lesser included offense instruction is properly refused when the operative facts constituting the offense do not provide an evidentiary basis for the lesser included offense. Pinkney v. State, 538 So.2d 329, 354 (Miss. 1988), vacated, 495 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990); Wetz v. State, 503 So.2d 803, 809 (Miss. 1987); Gates v. State, 484 So.2d 1002, 1004-1005 (Miss. 1986); Fairchild v. State, 459 So.2d 793, 801 (Miss. 1984); Johnson v. State, 416 So.2d 383, 387-389 (Miss. 1982).
Burglary of a dwelling, MISS. CODE ANN. § 97-17-19 (1972), consists of two elements: breaking and entering a dwelling with the intent to commit a crime. The present case is troubling, in that the jury found Robinson guilty of burglary, yet also found him not guilty of the crime which the state asserted he intended to commit when breaking into the house. What crime, we wonder, did the jury believe he intended to commit?
While we cannot answer that question, it is clear that the evidence produced by the State through J.M. and Roy Cartwright provided an evidentiary basis for trespass. Roy Cartwright testified that the first time Robinson entered J.M.'s house, she let him inside. J.M. testified that the first time Robinson entered her house he did so without her knowledge or consent, and she only discovered him as he came out of her bathroom; and, that the second time Robinson entered her house, he claimed to have left some money inside the house, and, when she went to get the money, she slammed the door and locked him out. Robinson then kicked in the door. Upon these two witnesses' testimony, the *119 jury could well have found a trespass, rather than burglary.
Similarly, Robinson testified as to hard feelings between himself and J.M. The jury apparently did not totally believe the testimony of Robinson's chief accuser, J.M., in that they returned a not guilty verdict on the attempted rape charge. Nevertheless, the jury apparently believed Robinson was guilty of some crime, but of what crime they believed him to be guilty, we can only surmise. One might ask whether, had a lesser included instruction been given, the jury would have found Robinson guilty of a misdemeanor (trespass), instead of burglary.
Accordingly, we find that Appellant should have been allowed to present a lesser included instruction, the denial of which, under the peculiar facts of this case, requires reversal.
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.
HAWKINS, P.J., dissents by separate written opinion.
PITTMAN, J., not participating.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent. The ruling of the circuit judge was a correct statement of the law.
NOTES
[1] The alleged victim of the attempted rape is assigned fictitious initials to protect her anonymity.