¶ 1. The defendant was convicted after a jury trial of possession of cocaine with intent to distribute. On appeal he argues that he was denied effective assistance of counsel, that he should have been granted a jury instruction for the lesser-included offense of possession, that proof of his prior convictions should not have been admitted for sentence enhancement purposes, that he was unfairly prejudiced by the statements of two State's witnesses not delivered to the defense until the day of trial, and that the evidence was insufficient to prove intent to distribute. We disagree with all of these contentions and affirm.
 FACTS ¶ 2. On October 27, 1998, Officers Denise McMullen and Don Morgan were on routine patrol in Meridian, Mississippi. At approximately 9:00 p.m., while traveling northbound on a city street, the patrolmen encountered a vehicle approaching in the southbound lane that was determined by police radar to be traveling at fifty-one miles per hour in the thirty mile-an-hour zone. For that reason, the automobile was stopped. The driver was the defendant, Reginald Dixon. A license check revealed that Dixon's driver's license had been suspended and that a contempt warrant had been issued for him by the City of Meridian. The officer decided to take Dixon into custody.
 ¶ 3. One officer instructed Dixon to get out of the vehicle and to place his hands on the car. While the pat down search was being conducted, the other officer noticed that Dixon was clinching a small plastic bag in his right hand that appeared to contain a white rocklike substance. Dixon was told several times to unclinch his fist, but he would not do so. When one officer attempted to place handcuffs on him, Dixon tried to pull away and flee the scene. After a short struggle, Dixon was subdued and placed into custody. Both officers testified that during the struggle Dixon threw the plastic bag that had been in his hand.
 ¶ 4. After Dixon was placed in the patrol car, one of the officers began searching for the plastic bag that Dixon had thrown. One bag was found. Just after it was retrieved, a security guard walked up and stated that he had witnessed the entire incident from a nearby guard hut. The guard, Robert Brown, said that there was in fact another bag. Brown pointed out the location of the second bag and it was then retrieved it as well. Later at the Meridian Police Department, Dixon gave a written and signed statement to a narcotics agent in which Dixon admitted that the drugs in the two bags were his and that he was using and selling them. The bags contained 3.7 grams of cocaine.
 ¶ 5. Dixon was indicted for the possession of the cocaine "with intent to sell," and also for the lesser charge of possession of cocaine. The indictment included a charge that Dixon had been convicted of two previous felonies involving the sale of a controlled substance. After a jury trial, Dixon was found guilty of possession of cocaine with intent to distribute. He was sentenced as a habitual offender to a term of sixty years in the Mississippi Department of Corrections.
 DISCUSSION I. Ineffective assistance of counsel ¶ 6. Dixon's first argument is that he was denied effective assistance of counsel. He claims that his trial counsel failed to defend him aggressively, resulting in prejudice to his case. Dixon alleges the following acts or omissions: 1) the failure to file a motion to suppress Dixon's statement to Officer Willis; 2) counsel's recommendation *Page 228 
that Dixon not testify; and 3) the failure to investigate and present the lower court with a pre-sentence report.
 ¶ 7. In order to prevail on a claim of ineffective assistance of counsel, a defendant must be able to show that his counsel's performance was deficient and that the deficiency prejudiced the defense. Stricklandv. Washington, 466 U.S. 668, 687 (1984). There is a rebuttable presumption that defense counsel's conduct was reasonable and competent.Moody v. State, 644 So.2d 451, 456 (Miss. 1994). Mississippi also recognizes a presumption that trial counsel's decisions are strategic in nature, rather than negligent. Handley v. State, 574 So.2d 671, 684
(Miss. 1990).
 ¶ 8. We will address each of Dixon's claims according to these well-established standards.
 A. Failure to file motion to suppress Dixon's statement to Officer Willis.
 ¶ 9. Dixon claims that his counsel should have filed a motion to suppress his signed written statement in which he admitted that the drugs were his and that he had them both to use and to sell. The basis of his argument is that his statement was involuntary and only done in response to a threat by the officer. The threat was that if Dixon did not write on the statement that he had intended to sell the drugs, that the officer would call his parole officer and that Dixon would never get out on bond. Dixon claims that the officer offered to help him get out on bond if he would admit in writing that he intended to sell the drugs. There is simply no support in the record for Dixon's allegations. Dixon's trial counsel questioned this officer as to whether or not she had promised to help Dixon. She responded that she had not promised Dixon anything. Absent any factual support for Dixon's allegations, there can be no prejudice in failing to file a motion to suppress.
B. Counsel's recommendation that Dixon not testify
 ¶ 10. Dixon claims that his trial counsel recommended that he not testify on his own behalf and that this strategy prejudiced the defense. There is no evidence in the record that Dixon's trial counsel persuaded him in any way not to testify on his own behalf. In fact the record demonstrates that the trial judge explained to Dixon that he had the right either to testify or not to do so, that the jurors could be instructed, should he choose not to testify, that they could draw no negative inferences from this refusal, and that the decision on testifying was his alone. Dixon acknowledged that he understood his rights. After informing him of his rights, the trial judge asked "whether you want to testify in your own defense or whether you want to remain silent and not testify?" Dixon responded that he would not testify. No defective counsel appears in this.
C. Failure to request a pre-sentence investigation
 ¶ 11. Dixon also claims that his trial counsel was ineffective for not requesting a pre-sentence investigation and report. Dixon was sentenced as a habitual offender. The relevant statute is this:
 Every person convicted in this state of a felony who shall have been convicted twice previously of any felony . . . and who shall have been sentenced to separate terms of one (1) year or more . . . shall be sentenced to the maximum term of imprisonment prescribed for such felony. . . .
Miss. Code Ann. § 99-19-81 (Rev. 2000).
 ¶ 12. The trial court had no discretion in sentencing since the habitual offender *Page 229 
statute requires mandatory sentencing of the maximum amount provided for by statute. Possession of cocaine with the intent to distribute carries a maximum sentence of thirty years. Miss. Code Ann. § 41-29-139 (Rev. 1993). Dixon's sentence was also subject to enhancement pursuant to Miss. Code Ann. § 41-29-147 (Rev. 1993), which allows for the maximum sentence to be doubled for anyone who has previously been convicted of a violation of the controlled substances act. Pursuant to the mandates of section 41-29-147 and section 99-19-81, the trial judge had no choice but to give Dixon a sixty year sentence. A pre-sentence investigation report would have been pointless.
 II. Lesser-included-offense instruction on possession ¶ 13. At trial Dixon requested a jury instruction on the lesser-included-offense of possession of cocaine. The State objected to the instruction arguing that the only evidence presented was Dixon's statement that he intended to use and sell the drugs. The trial judge agreed with the State and denied the instruction holding that there was no evidence presented that would allow a jury to draw the conclusion that Dixon was not guilty of the greater offense but guilty to the lesser offense.
 ¶ 14. The only evidence presented at trial was Dixon's statement to the officer that the cocaine was his and that he intended to use and sell it. The argument is made that the instruction was justified because of the attempt to convince the jurors through cross-examination of the officer who took the statement that she had threatened Dixon to force him to admit that he intended to sell the drugs. This raises the question of whether the officer's denial of defense counsel's questions about threats, because of possible doubts by jurors of whether the denial was accurate, can become the basis for an instruction even though no evidence to support the instruction exists.
 ¶ 15. To resolve this matter, perhaps the easy issues should be dispensed with first. An attack on the credibility of a witness does not create evidence of facts that are the opposite of what the witness stated. Affirmative evidence and inferences from that evidence are needed to prove facts; doubts about evidence including a witness's credibility can undermine the proof offered in favor of a position, but those doubts do not become proof of matters that the witness denied. A standard instruction to jurors about credibility includes a statement that impeachment of a witness is for the purpose of showing such witness to be unworthy of credit, and the impeachment cannot directly establish the guilt or innocence of an accused. Ferrill v. State, 643 So.2d 501, 505
(Miss. 1994).
 ¶ 16. Testimony which is incredible, significantly impeached, or otherwise is not believable should be disregarded. Rucker v. Hopkins,499 So.2d 766, 769 (Miss. 1986). Jurors can reject some testimony of a witness and accept the remainder. Henson v. Roberts, 679 So.2d 1041, 1045
(Miss. 1996). Rejected or disregarded evidence is not usable to prove the opposite of what it was intended to prove. We find no authority that belief that a witness is lying is "circumstantial evidence" of any fact other than that the witness is lying. Therefore, if Dixon needed to prove that the officer threatened him, the threat could not be proven simply by arguments that the witness's denials were incredible.
 ¶ 17. However, Dixon did not need to prove that a threat occurred. He needed to create reasonable doubt about the State's evidence that no threat occurred. If jurors had doubts that Dixon voluntarily said that he had the intent to sell the *Page 230 
drugs, then they might not find proof beyond a reasonable doubt of an intent to sell. Since Dixon had no burden to prove anything, does potential weakness in the State's evidence of intent to sell justify the possession instruction?
 ¶ 18. To answer the question, we examine two common statements of the principles in this area. A lesser-included-offense instruction is properly denied where "the evidence, viewed in a light most favorable to the defendant, could allow no hypothetical juror to find the defendant guilty of the lesser-included offense." Robinson v. State, 589 So.2d 116,118 (Miss. 1991). In order to be entitled to a lesser-included-offense instruction, there must be evidence of the lesser-included offense. Leev. State, 469 So.2d 1225, 1230 (Miss. 1985). If meaningful impeachment occurred of the only evidence of one element of the crime, a hypothetical juror might not find an accused guilty of the offense that required that element. An evidentiary basis for simple possession certainly existed, as possession with intent to sell includes all the elements of possession alone.
 ¶ 19. One way to interpret these principles is that any question that challenges the veracity of a witness on an element of the crime automatically entitles the accused to an instruction on the lesser-included-offense that omits that challenged element. That is an incredibly low threshold for a lesser-included-offense instruction. Hypothetically, an eyewitness could testify in an aggravated assault prosecution that the accused pointed a gun at the victim. The defense counsel could ask on cross-examination whether the witness might not have been mistaken and that the alleged gun was in fact only a stick. The witness could then state that he could not have been mistaken. If all the evidence supported that the object in question was a deadly weapon, then we are satisfied that the mere question does not create the need for a simple assault instruction.
 ¶ 20. We find that the point of departure for whether the lesser-offense instruction is necessary is whether the attempt to impeach has sufficient weight that a hypothetical reasonable juror might have found that it created some reasonable doubt. Thus we look specifically at what was said in this case.
 ¶ 21. Two relevant questions were asked of the witness who took Dixon's confession:
 A. He said he — that cocaine that he had at that time was for his using and to sell.
 Q. Okay. And did you promise him anything at that time if he'd tell you some other stuff that maybe, you know, you could get out of this?
 A. No, I did not promise him anything at that time.
 Q. Did you tell him something about that he needed to go ahead and say he was selling it so that maybe he could get a bond or help him out in some way?
 A. No, I did not.
 ¶ 22. In closing argument the defense counsel made no reference to his earlier attempt at impeachment nor did he allude in any way to the position that the officer may have induced a false confession of an intent to sell. The only reference in closing argument was by the prosecutor, who simply said that the officer "didn't promise him anything" for the confession. Would a reasonable, hypothetical juror consider this enough to find Dixon not guilty of the greater offense?
 ¶ 23. Precedents that conclude that instructions should not be given on mere speculation are relevant. Fairchild v. State, 459 So.2d 793,801 (Miss. 1984). Not only was there no evidentiary basis on which to conclude that there was a threat *Page 231 
or promise, there was not even a significant effort to create doubt that there might have been such inducements. Refusing the instruction was proper. The absence of a lesser-included-offense instruction did not mean that the jurors had to find Dixon guilty. To the extent that there was any basis, and we find none, on which the jurors could have had doubts about the intent to sell based on the alleged promises by the officer, the instruction that was given sufficed that any doubts about any element of the offense should lead to acquittal.
 ¶ 24. There was no error in refusing to grant the lesser-included instruction on simple possession.
 III. Evidence of prior convictions ¶ 25. At the sentencing hearing, the State introduced certified copies of two "pen packs" which included the sentencing order for both of Dixon's prior felony drug convictions. Dixon objected to the introduction of the documents, citing hearsay rules. The trial judge overruled the objection and admitted the documents into evidence for the purpose of proving that Dixon was a habitual offender and subject to enhanced sentencing.
 ¶ 26. Certified copies of commitment papers may be used as a substitute for the original judgment in order to prove prior convictions. King v. State, 527 So.2d 641, 646 (Miss. 1988). Documents contained in "pen packs" have also been admitted as competent evidence of prior crimes to enhance sentencing. Russell v. State, 670 So.2d 816, 832
(Miss. 1996). Rule 902 of the Mississippi Rules of Evidence covers self-authentication and provides in pertinent part:
 Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
 (4) A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, . . . or complying with any Act of Congress. . . .
M.R.E. 902(4). Further, 28 U.S.C.S. § 1738 provides this:
 The records and judicial proceedings of any court of any State, Territory or Possession, or copies thereof, shall be proved or admitted . . . by the attestation of the clerk and the seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form
Finally, Rule 44 of the Mississippi Rules of Civil Procedure authorizes the use of a copy of an official record in the place of the original as long as the copy is "attested by a person purporting to be the officer having the legal custody of the record, or his deputy. . . . "
 ¶ 27. The record provided to this court does not contain the actual documents used by the trial court at the sentencing hearing. Rather, the appellate record consists only of copies of the documents which were admitted, a matter proven by the fact that our copies contains only a copy of the trial exhibit labels affixed to the documents. Without the documents that were actually introduced at the hearing being in the record, we cannot review Dixon's claim that the documents admitted at trial were mere copies of certified copies. A certified copy of the "pen packs" would have been sufficient as competent evidence of Dixon's prior convictions. Without any evidence in the record to support Dixon's claim that the documents were copies of certified copies, we *Page 232 
have to conclude that the trial court properly ruled them admissible.
 IV. Statements of Officer McMullen and Robert Brown ¶ 28. During cross-examination of one of the arresting officers, defense counsel discovered that the officer had prepared a written report of Dixon's arrest. The officer was instructed to retrieve the report. While she was gone, the defense counsel moved for a continuance. The request for a continuance was based upon the failure of the State to disclose the statement and the statement of Robert Brown, the security guard, which was not given to the defense until the morning of trial. The trial judge granted a recess of about twenty minutes in order to give counsel time to review the two reports. Following the recess defense counsel once again requested a continuance claiming that he needed additional time to review the two statements. The trial judge ruled that there was no discovery violation with the statement of Robert Brown because the statement was not prepared by Brown until the morning of trial at which time it was promptly turned over to the defense. The trial judge also stated that he could see no way that defense counsel could possibly be unfairly surprised or prejudiced by the arresting officer's statement since it was identical to her testimony.
 ¶ 29. After the second request for a continuance was denied, an additional recess of over one and one-half hours was given. Following the second recess, the trial resumed without objection from the defense. Dixon now claims that the court should have granted a continuance or a mistrial due to unfair surprise and prejudice caused by the two statements.
 ¶ 30. The controlling rule on discovery violations states:
 If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
 1) Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs, or other evidence, and;
 2) If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
URCCC 9.04. The trial judge applied Rule 9.04 and held that even though the defense claimed undue surprise and prejudice after having an opportunity to review the statements, he did not need to grant a mistrial or a continuance because "these are unusual circumstances." The judge stated that the arresting officer's statement was consistent with her trial testimony and with the earlier-provided written statement of the other arresting officer. There was also a dispute as to whether or not the late-provided statement had actually been furnished to the defense and then lost since it was in the district attorney's discovery packet. The defense counsel had allowed Dixon to possess the entire discovery packet in the county jail for nearly two months leading up to trial.
 ¶ 31. Defense counsel was given two separate recesses to review the statements, which he now claims caused undue surprise and prejudice to the defense. After the second recess, no further objection appeared from Dixon's counsel that he still was not prepared to continue. *Page 233 
 V. Sufficiency of the evidence ¶ 32. Dixon's final argument is that the State failed to prove that he had the intent to deliver the cocaine. The standard of review for a challenge to the sufficiency of the evidence is well settled:
 [t]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence . . . consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to resolved by the jury. We are authorized to reverse only where, with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
McClain v. State, 625 So.2d 774, 778 (Miss. 1993).
 ¶ 33. The jury was presented with Dixon's written statement in which he admitted that the drugs were his and that he intended to use and sell them. That was sufficient evidence from which reasonable and fair minded jurors could conclude that Dixon had the proper intent.
 ¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OFCONVICTION OF POSSESSION OF COCAINE WITH THE INTENT TO DISTRIBUTE ANDSENTENCE OF SIXTY YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THEMISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THISAPPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, AND MYERS, JJ.,CONCUR. LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. IRVING, J.,CONCURS IN RESULT ONLY. CHANDLER, J., NOT PARTICIPATING.