# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2012-CP-00378-COA

CHERYL OGUNBOR                                                          APPELLANT

v.

MALEISHA MAY, SHAWN EVANS, LULA                             APPELLEES
JACKSON, SEARS ROEBUCK & CO., EDITH
ANDREWS AND BRYAN IMPEY

DATE OF JUDGMENT:          02/13/2012
TRIAL JUDGE:               HON. MICHAEL M. TAYLOR
COURT FROM WHICH APPEALED: PIKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    CHERYL OGUNBOR (PRO SE)
ATTORNEYS FOR APPELLEES:   JOSEPH M. STINSON
                           BRADLEY FAREL HATHAWAY
                           DAVID RYAN BRUHL
                           ANDREW FRANK TOMINELLO
NATURE OF THE CASE:        CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:   GRANTED APPELLEES' MOTIONS TO
                           DISMISS
DISPOSITION:               AFFIRMED - 03/29/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### CONSOLIDATED WITH

## NO. 2013-CP-00653-COA

CHERYL OGUNBOR                                                          APPELLANT

v.

SEARS ROEBUCK & CO., LULA JACKSON                           APPELLEES
AND MALEISHA MAY

DATE OF JUDGMENT:          04/04/2013
TRIAL JUDGE:               HON. MICHAEL M. TAYLOR
COURT FROM WHICH APPEALED: PIKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    CHERYL OGUNBOR (PRO SE)

ATTORNEYS FOR APPELLEES:     JOSEPH M. STINSON
                                      BRADLEY FAREL HATHAWAY
                                      DAVID RYAN BRUHL
                                      ANDREW FRANK TOMINELLO
NATURE OF THE CASE:         CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:    GRANTED APPELLEES' MOTION FOR
                                      SUMMARY JUDGMENT
DISPOSITION:                 AFFIRMED - 03/29/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., ISHEE AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.    Cheryl Ogunbor[1] sued Sears and a number of its employees. She claimed a female Sears employee sexually harassed her by visiting her house once, driving past her house a few times, looking at her while she was at Sears, and texting her less than ten times. Ogunbor alleged that Sears was vicariously liable for its employee's behavior. But Ogunbor failed to serve some of the defendants with process within the 120-day deadline. And Sears successfully moved for summary judgment because its employee's conduct was not within the course and scope of her employment. Ogunbor appeals, but there is no merit to her claims. Accordingly, we affirm the Pike County Circuit Court's judgment.

## BACKGROUND

¶2.    This procedurally complex negligence litigation is the unexpected result of Ogunbor's April 2, 2010 purchase of patio furniture from Sears in McComb, Mississippi. Sales associate Damian Cotton helped Ogunbor with her purchase, which had to be shipped to

---

[1] Ogunbor has represented herself throughout all stages of these proceedings. During her deposition, she stated that she was once a licensed paralegal, but she did not maintain the continuing education requirements.

2

McComb. Ogunbor gave Cotton her cell phone number so she could be informed when her furniture was available to be picked up. While discussing assembly of the furniture and the possibility of home delivery, Ogunbor mentioned her home in Tylertown, Mississippi. Another employee, Maleisha May,[2] overheard Ogunbor. During her deposition, Ogunbor admitted that she told May where she lived. According to May, during their brief casual conversation, Ogunbor seemed proud of her home and landscaping, and she mentioned "her nice cars, including a Jaguar, and she told us about her jacuzzi." May also said that Ogunbor "invited [her] and other store employees to visit her home whenever [they] wanted."

¶3.     The next afternoon, May went to Ogunbor's house. She and Ogunbor talked in the driveway for less than five minutes. During their brief conversation, May mentioned that Ogunbor's furniture had been ordered. She said that she had stopped by the previous night, but she could not find Ogunbor's doorbell. May also mentioned that she liked the "Girls like riding, too" sticker on the rear window of Ogunbor's truck. Ogunbor excused herself because she was cooking food at the time. Ogunbor later agreed that May was "pleasant" during the conversation.

¶4.     On April 7, 2010, Cotton called Ogunbor to tell her that her furniture had arrived at the McComb store, but she would need to order an umbrella stand. The next day, an auto dialer called Ogunbor because her furniture was ready for pickup. Cotton called Ogunbor again about the umbrella stand. May also contacted Ogunbor. According to May, she had learned through Cotton that Ogunbor's furniture was ready to be picked up. Approximately

---

[2] May was employed as a "hardlines merchandise-pricing associate."

an hour before she was scheduled to begin her shift at Sears, May "took it upon [her]self to let [Ogunbor] know that her merchandise had arrived."

¶5.     Using an abbreviated shorthand, May sent Ogunbor the following text message: "Hello how r u just txtw 2 let u know ur patio set is ready 4 u 2 pick up I only love one person[.]" May's text led to the following exchange:

Ogunbor:     and who do u love

May:          my lil boy im a single lady lookn  I only love one person

Ogunbor:     who is this

May:          they gurl from Sears  I only love one person

Ogunbor:     oh hey

Ogunbor:     Im coming tomorrow

May:          o ok  I only love one person

May later explained that the "I only love one person" statement in her text messages was an automatically generated closing that appeared in all of her text messages.

¶6.     On April 9, 2010, Ogunbor made two trips to McComb to pick up her patio furniture. While her furniture was being loaded into the back of her truck, Ogunbor asked Cotton and another Sears employee, Lula Jackson, about May. According to Ogunbor, they told her that May was homosexual. May did not speak to Ogunbor that day. However, Ogunbor later claimed that May "stalked" her while she was at Sears, because May looked at her for an unspecified time from a distance of approximately thirty to fifty feet.

¶7.     At approximately 4:30 p.m. the next day, Ogunbor and her gardener, John Badon,

4

were washing her three cars in her driveway. Nearly three hours later, the following text exchange occurred:

May: I seen them cars out front 2day  he saw the best in me

Ogunbor: I need you to stop coming by my house n texting me

May: ok that fine but I did cum by ur house I was on the main highway gud day  he saw the best in me

Ogunbor: how did you get my number

That was the last time that May communicated with Ogunbor.

¶8.    May later explained that hours before she sent her initial text message, she had been driving on Beulah Avenue in Tylertown when she happened to see Ogunbor outside. Ogunbor's house was not on Beulah Avenue. According to May, her second text message was an attempt to explain that she had not been driving on Ogunbor's street, but she accidentally omitted "not" from the message. However, Ogunbor interpreted the message much differently. She adamantly believed that May's second message was sexually explicit.[3]

¶9.    Approximately an hour later, Ogunbor called Sears and spoke to Edith Andrews, the manager of the McComb Sears. Ogunbor claimed that May had stolen her cell phone number, and she had been stalking and harassing her. When Jackson called Ogunbor two days later, Ogunbor said she could not talk because she was in the emergency room with symptoms caused by distress related to May. Before ending the call, Jackson told Ogunbor that Shawn Evans was Sears's district manager for the area. The next day, Ogunbor tried to

_____

[3] During her deposition, Ogunbor said she interpreted May's text message as though May was telling her that she had "an orgasm by [Ogunbor's] house."

5

call Evans seventeen times between 2:30 p.m. and 4:00 p.m.

¶10. Evans called May back on April 16, 2010. Ogunbor thought that Evans "sounded like he was . . . just doing the paperwork" associated with her complaints. That same day, Ogunbor contacted the McComb Police Department and filed harassment charges against May.[4] Ogunbor eventually stopped contacting Sears employees when the company's legal department told her to stop.[5]

**PROCEDURAL HISTORY**

¶11. As previously mentioned, this case is somewhat procedurally complex.[6] On April 6, 2011, Ogunbor filed a pro se complaint against Sears, May, Evans, and Jackson. The complaint listed Cotton, Andrews, and Brian Impey[7] as witnesses. A fourth Sears employee, Karen Wheat,[8] was mentioned in the complaint, but she was not characterized as a defendant or a witness. Seeking $200,000 in damages, Ogunbor claimed that May stalked and sexually

---

[4] On February 16, 2011, the McComb Municipal Court found May guilty of making harassing telephone calls. May was fined $750, ordered to pay court costs, and placed on probation for six months. According to May, she could not afford to pay a lawyer to appeal the misdemeanor conviction. Ogunbor mistakenly characterizes May's conviction as a felony. A felony is "any violation of law punished with death or confinement in the penitentiary." Miss. Code Ann. § 1-3-11 (Rev. 2014).

[5] During her deposition, Ogunbor said "initially at the beginning, even if they would have just reimbursed me for my patio set, I would have been happy with that . . . ."

[6] The consolidated record is voluminous due to the atypical amount of material that was filed. Although we have carefully combed through the record, for clarity's sake, our discussion of the procedural history is not exhaustive. Instead, we focus on the events that impact the disposition of the case and the issues on appeal.

[7] According to the complaint, Impey was "a [s]tore [m]anager and/or [s]upervisor."

[8] The complaint described Wheat as a district manager.

harassed her. She alleged that Sears failed to prevent May from obtaining her cell phone number and using it "for personal gain." Additionally, she claimed that Sears "failed to protect" her from May, and failed to "take corrective action" against May.

¶12. On April 19, 2011, Ogunbor filed a two-page amended complaint. She did not raise any new claims. The sole purpose of the amended complaint was to list Impey and Wheat as defendants. After being served through its registered agent, Sears filed an answer denying any liability.

¶13. On April 25, 2011, Deputy Vernon Washington of the Pike County Sheriff's Department went to Sears to serve process. He successfully served Impey, and he also left process for May with Impey. Deputy Washington was not able to serve Wheat, Evans, or Jackson. Wheat and Evans had never worked at the McComb location, and Jackson had been transferred to another state.

¶14. Impey filed a motion to dismiss. The original complaint characterized Impey as a witness, and the amended complaint merely listed him as a defendant. So Impey reasoned that Ogunbor had failed to state a claim against him.

¶15. Ogunbor responded by requesting leave to file a second amended complaint. She specifically sought to allege that "[b]ecause of [r]espondeat [s]uperior in this matter, the supervisors and/or management should be held liable for May's actions." However, she did not attach a proposed second amended complaint to her motion.

¶16. The circuit court conducted the first of several hearings in the case on August 8, 2011. Ultimately, the circuit court granted Impey's motion to dismiss because Ogunbor had failed

7

to state a claim against him. The circuit court also denied Ogunbor's request for a default judgment against May because she had not been properly served with process. However, the circuit court granted Ogunbor's July 6, 2011 motion for additional time to serve Evans, Jackson, and Wheat. On August 19, 2011, Deputy Washington personally served May with process.

¶17. Ogunbor filed a second amended complaint on September 16, 2011. She did not list Impey or Wheat as defendants, but she added Andrews as a defendant for the first time during the litigation. The remaining defendants remained unchanged.

¶18. In the second amended complaint, Ogunbor again claimed that May "stole [her] phone number" and "phone harassed, stalked[,] and sexually harassed [her] on numerous occasions." She further claimed that Sears, Jackson, Evans, and Andrews all failed to prevent or "take corrective action to stop" May. Reiterating her request for $200,000 in damages, Ogunbor alleged that May's behavior forced her to "seek medical treatment," and she "had to endure shock, embarrassment, humiliation, fear, nose bleed, . . . fatigue, laryngitis, lightheadedness, flu-like symptoms[,] and other ailments[.]"

¶19. A flurry of procedural activity followed. Sears, May, Jackson, and Andrews moved to strike the second amended complaint. May filed a motion to dismiss and claimed that Ogunbor failed to timely serve her with process. Evans also filed a motion to dismiss based on insufficient service of process by publication.

¶20. The circuit court heard several motions on January 30, 2012. The circuit court granted the motions to strike Ogunbor's second amended complaint because she had failed to obtain

8

leave to file it. Since Andrews had only been named as a defendant in the second amended complaint, the circuit court dismissed her from the litigation.

¶21. The circuit court also dismissed Evans and May from the litigation because Ogunbor did not demonstrate good cause for her failure to properly serve them with process within 120 days of filing her complaint. Sears and Jackson were the only remaining defendants.

¶22. Sears and Jackson[9] filed a motion for summary judgment on April 18, 2012. Sears argued that it had no duty to prevent the conduct that Ogunbor alleged, because it was outside the course and scope of May's employment. The circuit court agreed. Ogunbor appeals.

## ANALYSIS

### I. Service of Process

¶23. Ogunbor argues that the circuit court erred when it granted May's motion to dismiss. According to Ogunbor, there was good cause for her failure to timely serve May based on Deputy Washington's return. Ogunbor also claims that May avoided service of process. Additionally, Ogunbor argues that during the August 2011 hearing, Sears's attorney appeared for May, and the circuit judge implicitly gave her an extension to serve May.

¶24. "Sufficiency of service of process is a jurisdictional issue, which is reviewed de novo." *BB Buggies Inc. v. Leon*, 150 So. 3d 90, 95 (¶6) (Miss. 2014). An appellate court also conducts a de novo review of a trial court's decision to grant a motion to dismiss. *Lewis v. Forest Family Practice Clinic P.A.*, 124 So. 3d 654, 656 (¶7) (Miss. 2013). "However, when reviewing fact-based findings, we will only examine whether the trial court abused its

---

[9] For simplicity, we refer to Sears and Jackson here and in the analysis collectively as "Sears."

9

discretion and whether there was substantial evidence supporting the determination." *Johnson v. Rao*, 952 So. 2d 151, 154 (¶9) (Miss. 2007).

¶25.    Ogunbor filed her original complaint on April 6, 2011.  After filing a complaint, a plaintiff has 120 days to serve a defendant with process.  M.R.C.P. 4(h).  To complete personal service of process upon an individual Mississippi resident (other than an unmarried infant or an incompetent person), a process server must deliver "a copy of the summons and of the complaint to him personally or to an agent authorized by appointment or by law to receive service of process."  M.R.C.P. 4(d)(1)(A).  It is undisputed that Deputy Washington served Impey – not May – on April 25, 2011.  Serving Impey was inadequate.  Ogunbor's pro se status did not relieve her of the obligation to "strictly comply" with Rule 4.  *See Perry v. Andy*, 858 So. 2d 143, 149 (¶23) (Miss. 2003).

¶26.    Contrary to Ogunbor's assertion, the 120-day deadline began to run from April 6, 2011, rather than her April 17, 2011 amended complaint.  There were no allegations in the amended complaint – much less new allegations.  "Whenever the claim . . . asserted in the amended pleading arose out of the conduct . . . or occurrence set forth . . . in the original pleading, the amendment relates back to the date of the original pleading."  M.R.C.P. 15(c).  Ogunbor's amended complaint did not raise any claims at all.  Therefore, the deadline to serve May related back to the original complaint, and it expired on Thursday, August 4, 2011.  It is undisputed that May was first personally served with process fifteen days beyond the deadline on August 19, 2011.

¶27.    Ogunbor claims there was good cause for her untimely service of May.  According

to Ogunbor, Deputy Washington's April 25, 2011 return gave her the impression that he had successfully served May. Alternatively, Ogunbor claims that May "dodged" service of process. We are mindful that "[a] trial court's finding of fact on the existence of good cause for the delay in service of process has been deemed 'a discretionary ruling and [is] entitled to deferential review' on appeal." *Holmes v. Coast Transit Auth.*, 815 So. 2d 1183, 1185 (¶6) (Miss. 2002) (quoting *Rains v. Gardner*, 731 So. 2d 1192, 1197 (¶18) (Miss. 1999)).

¶28. The Mississippi Supreme Court "has set a high standard for establishing good cause." *Powe v. Byrd*, 892 So. 2d 223, 226 (¶11) (Miss. 2004). "[T]o establish good cause[,] the plaintiff must demonstrate at least as much as would be required to show excusable neglect[.]" *Id*. at (¶10). "[S]imple inadvertence . . . or ignorance o[f] the rules usually does not suffice." *Id*.

¶29. Deputy Washington's return was not misleading. It clearly stated that he had served Impey on May's behalf. Anyone familiar with Rule 4 had ample reason to know that May had not been properly served. Simply blaming a process server "is insufficient to demonstrate good cause. The plaintiff must make a showing of diligence in seeking to effect service." *Copiah Cty. Sch. Dist. v. Buckner*, 61 So. 3d 162, 167 (¶16) (Miss. 2011). It was within the circuit court's discretion to find that the return did not qualify as good cause for failing to timely serve May.

¶30. As for Ogunbor's claim that May "dodged" service, there is no support for her assertion beyond her self-serving conjecture. In her initial brief, Ogunbor asserts that Deputy Washington "said [May] dodged service, after hiding in clothing on the racks. Once he

11

determined what [May] looked like, [Deputy Washington] realized [that May had been hiding] in the clothes [rack,] and then [he] served her." However, there is no indication that Deputy Washington actually said that May had hidden from him in a clothes rack at some unspecified time. Those statements are solely attributable to Ogunbor. They do not appear in the record.

¶31. Deputy Washington never testified during any of the hearings. The record contains a single affidavit executed by Deputy Washington. It states that on April 19, 2011, he received process to be served on May, and "[a]fter several attempts" he later served Impey on May's behalf. The affidavit goes on to state that on August 1, 2011, Deputy Washington received some unspecified documents and, "[a]fter several attempts," he went to Sears and served Elkeith Martin on May's behalf. Finally, the affidavit describes Deputy Washington's attempt to serve May with process on August 17, 2011. According to the affidavit, Deputy Washington went to Sears, but an employee was not able to find May. The Sears employee was "puzzled" that she could not find the work schedule in its normal location. The affidavit does not indicate that Deputy Washington ever attempted to serve May anywhere other than Sears. There was no evidence that any other process server tried to serve May.

¶32. Although Deputy Washington's affidavit discussed his unsuccessful attempts to serve May at Sears, it does not state that she actively avoided service of process. It certainly does not state that May had ever hidden from him in a clothes rack. The circuit court did not abuse its discretion when it found that there was no good cause for failing to timely serve May based on the completely unsupported claim that May evaded service of process.

12

¶33. In her reply brief, Ogunbor claims that although Sears's attorney has never represented May and May later obtained her own attorney, Sears's attorney entered an appearance on May's behalf during the August 2011 hearing. Ogunbor reasons that May waived service of process. However, Ogunbor did not raise that issue in her initial brief. Without citing any authority, Ogunbor's initial brief included two sentences to support her claim that Sears's attorney entered an appearance for Evans, but she did not argue that he had entered an appearance for May. She first raised that argument before this Court when she filed her reply brief. "We will not consider issues raised for the first time in an appellant's reply brief." *Shelton v. State*, 172 So. 3d 216, 220 (¶20) (Miss. Ct. App. 2014).

¶34. Finally, Ogunbor claims that the circuit court implicitly gave her an extension to serve May. Her reasoning is based on events that occurred during the August 8, 2011 hearing. Prior to that hearing, Ogunbor had filed a motion for additional time specifically to serve Jackson, Evans, and Wheat. Apparently thinking that May had been served on April 25, 2011, Ogunbor sought a default judgment against May.

¶35. During the August 8, 2011 hearing, the circuit court denied Ogunbor's request for a default judgment against May because she had not been properly served with process. Ogunbor subsequently reminded the circuit court of her motion for additional time to serve "the other [d]efendants [who] are *abroad in other states* . . . ." Ogunbor's complaint and amended complaint consistently described May as a Mississippi resident. Additionally, Ogunbor had previously indicated that Jackson, Evans, and Wheat were not Mississippi residents. It follows that Ogunbor's request for time to serve defendants in other states

13

cannot be interpreted as a request for time to serve May, who was not in another state.

¶36. Although Ogunbor had never specifically asked for time to serve May, Ogunbor maintains that she received additional time. Her rationale is based on the circuit judge's statement when he orally granted her motion for time to serve Jackson, Evans, and Wheat. The circuit judge said Ogunbor had "an additional 60 days to serve anyone from today's date." However, Ogunbor's own proposed order contradicts her claim that she believed she received an extension to serve May.

¶37. Sears's attorney submitted a number of proposed orders after the August 8, 2011 hearing. Claiming that they contained "numerous inaccuracies," Ogunbor did not approve of any of them. She submitted her own proposed orders on September 2, 2011. Her proposed order granting her motion for additional time to serve process only related to Jackson, Evans, and Wheat. In other words, even her own proposed order would not have given her additional time to serve May.

¶38. Ogunbor claims that she omitted May because she thought she did not need additional time to serve her. Even traveling under the mistaken belief that the deadline expired 120 days from the amended complaint, that date lapsed on August 17, 2011. May was not personally served with process until August 19, 2011. If Ogunbor believed she had received an extension to serve May, it defies logic for her to omit May from her own proposed order granting additional time. When Ogunbor submitted her September 2, 2011 proposed order, she knew that under any calculation, May had been served too late.

¶39. To summarize, Ogunbor failed to have May timely served with process. Deputy

14

Washington's April 25, 2011 return clearly stated that he had served Impey – not May. And there was no evidence that May avoided service. We cannot find that the circuit court granted an extension that Ogunbor never requested prior to or during the August 2011 hearing, particularly where Ogunbor's own proposed order contradicts her claim that she received an extension to serve May. There is no merit to Ogunbor's claim that the circuit court erred when it granted May's motion to dismiss.

## II. Second Amended Complaint

¶40. Ogunbor claims the circuit court erred when it struck her second amended complaint. She argues that the circuit court implicitly gave her permission to file the second amended complaint during the August 2011 hearing. We are obligated to uphold the circuit judge's decision to strike the second amended complaint unless he abused his discretion. *Moeller v. Am. Guar. & Liab. Ins.*, 812 So. 2d 953, 961 (¶26) (Miss. 2002).

¶41. During the August 2011 hearing, the circuit court dismissed Impey from the litigation because Ogunbor failed to state a claim against him in her original or first amended complaint. Additionally, the circuit court denied Ogunbor's motion to amend her claim against Impey because there was "simply nothing in the complaint or . . . the . . . motion to amend the complaint[] that states . . . the theory under which [Ogunbor sought] to hold Mr. Impey liable for [her alleged] injuries." The circuit judge added that "the dismissal will be without prejudice for [Ogunbor] to refile or whatever [she thought she] need[ed] to do."

¶42. Later, the circuit judge attempted to clarify his decision by stating:

> I dismissed the complaint . . . against Mr. Impey. If you want to refile or try
> to amend, bring him in - - I did it without prejudice, which means I'm not

15

ruling that you can[.] I'm ruling that you can try. Does that make sense? I'm not saying, "Oh, yeah, file it, and that will be fine, and everything will be good."

. . . .

I'm leaving that open, that possibility open that you can refile either as a new complaint or to file an amended complaint. But the problem is that you asked me for permission to amend the complaint, but you didn't attach a proposed amended complaint, which the rule requires. So I can't say, ["S]ure, you can amend your complaint["] without seeing the actual complaint you're trying to file. So what I'm saying is get me an amended complaint and we'll go from there. Okay?

Ogunbor responded: "Okay."

¶43. Without first filing a motion for leave, on September 16, 2011, Ogunbor filed her second amended complaint. As previously mentioned, multiple defendants moved to strike it. Ogunbor then filed a motion for nunc pro tunc leave to file a second amended complaint. On January 30, 2012, the circuit court heard all motions pertaining to Ogunbor's second amended complaint. During the hearing, Ogunbor claimed that at the August 2011 hearing, the circuit judge had given her permission to file the second amended complaint because he said Impey's dismissal was without prejudice for "whatever" she wanted to do. In other words, Ogunbor claimed that the circuit judge gave her permission to file anything that she wanted.

¶44. The circuit judge clarified his August 2011 ruling:

[A]fter I dismissed the complaint against Mr. Impey, without prejudice, which again, dealt strictly with him, to allow you to refile a properly styled complaint or a properly drafted complaint against him, then to file a new complaint with new defendants, with new causes of actions is - - was beyond the - - beyond the boundaries of what I allowed.

16

My intention and the reason an order was never signed, there was never an order presented that memorialized the ruling of the Court, which was that you were free to file an amended complaint to restate your claim against Mr. Impey, if you had one.

Much later, the circuit court added: "I didn't mean, [']Here, Ms. Ogunbor, here's a blank check, I have given you permission to do whatever, and then you are now blessed by the Court to file anything you want.['] I certainly didn't mean that." Consequently, the circuit court struck Ogunbor's second amended complaint.

¶45. Remaining adamant that the circuit judge gave her advance permission to file "whatever" she wanted, Ogunbor characterizes the decision to strike her second amended complaint as a "fraud upon the court." To agree with Ogunbor, we would have to isolate the word "whatever," ignore the context of its use and the subject matter at issue, and then weigh that single word more favorably than everything else that was said during the August 2011 hearing. Ogunbor may have misunderstood the circuit judge, but it would be intellectually dishonest to find that her position has merit. With utmost respect, her misunderstanding did not obligate the circuit judge to ignore the proper procedure to amend her complaint under the circumstances. And the record does not support her claim that the circuit judge summarily gave Ogunbor advance sweeping permission to file whatever subsequent amended complaint that suited her.

¶46. Before filing her second amended complaint, Ogunbor was obligated to obtain the circuit court's permission or "written consent of the adverse part[ies.]" *See* M.R.C.P. 15(a). She failed to do so. "If a party fails to seek leave of the court or permission of the opposing party prior to amending the pleadings, such amendment is improper and will be struck." *D.P.*

17

*Holmes Trucking LLC v. Butler*, 94 So. 3d 248, 255 (¶20) (Miss. 2012). Ogunbor did not subsequently move to file an amended complaint while following the proper procedures. We find that the circuit judge acted within his discretion when he struck Ogunbor's second amended complaint. It follows that this issue is meritless.

### III.    Summary Judgment

¶47.    On April 5, 2013, the circuit court entered its order granting summary judgment in favor of both Sears and Jackson. Relying heavily on *Baker Donelson Bearman Caldwell & Berkowitz P.C. v. Seay*, 42 So. 3d 474 (Miss. 2010), the circuit court held:

> If the Court takes as true all facts alleged by the plaintiff, the Court must conclude that the misconduct, if any, by Ms. May toward Ms. Ogunbor, by definition, would have temporarily suspended Ms. May's employment relationship with Sears. Ms. Ogunbor complains of unwanted sexual advances, stalking, and unwanted text communication. These are concealed, clandestine, and personal actions . . . take[n] for personal benefit, and [the] very . . . type of action contemplated by the *Baker Donelson* Court. It is ludicrous to think that Sears hired Ms. May to stalk or make unwanted sexual advances toward customers or that somehow these actions, if they occurred, further the interest of Sears in any[ ]way.
>
> Furthermore, the only interactions that Ms. Ogunbor complains of that possibly occurred while Ms. May was on the clock for Sears, were on the date of purchase, when Ms. May allegedly obtained Ms. Ogunbor's telephone number, and when Ms. Ogunbor picked up her furniture, and saw Ms. May looking at her. All of the episodes of text messaging occurred on Ms. May's personal time, while she was attending personal business. It is axiomatic that the actions of texting, looking, [and] talking[] are either not wrongful, or if they are wrongful, they could not have been performed in furtherance of Sears['s] interests, and were not the kind of actions Sears hired . . . May to perform.

(Citations omitted). The circuit court further held that Sears had no duty to supervise May while she was not working.

¶48.    Ogunbor claims summary judgment was premature because discovery was ongoing.

She further argues that genuine issues of material fact preclude summary judgment. Finally, Ogunbor claims that the circuit court erred when it considered an affidavit Sears submitted to support its position that May's alleged conduct was not in the course and scope of her employment.

### A. Discovery

¶49. Between Ogunbor's April 2011 complaint and the December 2012 summary-judgment hearing, Ogunbor propounded five sets of discovery to Sears. She never attempted to depose anyone. Although there was no indication that Sears failed to respond to any of her five sets of discovery, Ogunbor essentially requested that the circuit court compel responses that she found adequate. The circuit judge declined. We will not disturb his decision unless he abused his discretion. *Johnston v. Palmer*, 963 So. 2d 586, 595 (¶20) (Miss. Ct. App. 2007).

¶50. Under certain circumstances, a trial court may deny or postpone summary judgment based on the need for additional or ongoing discovery. *See* M.R.C.P. 56(f). "An opportunity to flesh out discovery may especially be required where the information necessary to oppose the motion for summary judgment is within the possession of the party seeking summary judgment." *Owens v. Thomae*, 759 So. 2d 1117, 1120 (¶12) (Miss. 1999). But the nonmoving party must demonstrate "how the additional discovery will create a genuine issue of material fact." *Id*. at 1122 (¶17). It is not enough to "outlin[e] what [one] might discover later." *Johnston*, 963 So. 2d at 595 (¶20). "Summary judgment may be granted, in spite of a Rule 56(f) request for time for additional discovery, when the record contains all the necessary information for a ruling on the motion." *City of Jackson v. Shavers*, 97 So. 3d 686,

692 (¶21) (Miss. 2012).

¶51. For brevity's sake, we do not address the precise substance of Ogunbor's fourth and fifth sets of discovery requests, which she propounded approximately eighteen months into the litigation. It is enough to say that based on Sears's responses to her first, second, and third discovery requests, Ogunbor generally rephrased or expanded upon her previous questions by seeking multiple-part responses. The transcript of the December 14, 2012 hearing demonstrates that the circuit court carefully reviewed each of the points that Ogunbor raised in her motion to compel even more discovery. The circuit court did not abuse its discretion when it denied that motion. *See Morton v. City of Shelby*, 984 So. 2d 323, 342 (¶46) (Miss. Ct. App. 2007) ("Having failed to establish any narrowly-tailored issues to be addressed by additional discovery, [a] request for such amounts to nothing more than an attempt to re-open the entire discovery process."). There is no merit to this argument.

### B. Affidavit

¶52. To support its summary-judgment motion, Sears submitted an affidavit from John Theiss, "the Systems Engineer for Sears[.]" Theiss's affidavit stated that through his position, he had "knowledge of the compilation of certain data maintained by Sears, including time records of [its] employees[,] . . . recorded in the form of what is referred to as 'punch detail data.'" The "punch detail data" was "electronically recorded at or near the time it was entered[,] and it was kept in the course of Sears's regularly conducted business activities." Theiss attached May's punch detail data to his affidavit. Theiss then stated that May did not work for Sears on April 3, 2010, or April 5, 2010. On April 8, 2010, May

20

worked from 4:00 p.m. until 9:00 p.m. And on April 10, 2010, May worked from 9:24 a.m. until 12:34 p.m.

¶53. As previously mentioned, the first text-message exchange that Ogunbor found objectionable occurred at approximately 3:00 p.m. on April 8, 2010. The second occurred at approximately 7:00 p.m. on April 10, 2010. In the order granting summary judgment, the circuit court partially relied on Theiss's affidavit in holding that "[a]ll of the episodes of text messaging occurred on Ms. May's personal time, while she was attending personal business."

¶54. Ogunbor claims the circuit court erred when it did not strike Theiss's affidavit. She argues that Theiss was not able to authenticate May's punch detail data. "A court's grant or denial of a motion to strike an affidavit is subject to an abuse-of-discretion standard of review." *Trustmark Nat'l Bank v. Meador*, 81 So. 3d 1112, 1116 (¶9) (Miss. 2012).

¶55. Ogunbor argues that Theiss failed to properly authenticate May's punch detail data under Rule 44 of the Mississippi Rules of Civil Procedure. Rule 44 applies to authentication of "official" foreign and domestic records, such as the documentation necessary to prove that a person qualifies for enhanced sentencing based on prior convictions. *See Dixon v. State*, 812 So. 2d 225, 231 (¶26) (Miss. Ct. App. 2001). It does not apply to the circumstances involving Theiss's affidavit. There is no merit to Ogunbor's claim that Sears was obligated to authenticate Theiss's affidavit as set forth in Rule 44.

### C. Genuine Issues of Material Fact

¶56. Finally, Ogunbor claims the circuit court erred when it granted Sears's summary-judgment motion because there were genuine issues of material fact to be resolved by a jury.

"We review the grant or denial of a motion for summary judgment de novo, viewing the evidence 'in the light most favorable to the party against whom the motion has been made.'" *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013) (quoting *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 71 (¶5) (Miss. 2012)). "A grant of summary judgment will be upheld only when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact." *Forbes v. Gen. Motors Corp.*, 993 So. 2d 822, 824 (¶7) (Miss. 2008). "Only when the moving party is entitled to judgment as a matter of law is summary judgment appropriate." *Id*. However, the nonmoving "party may not rest upon the mere allegations or denials of his pleadings, but h[er] response, by affidavits or [depositions, answers to interrogatories, or admissions], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

¶57. Ogunbor did not allege any causes of action in her first amended complaint, and we have found that the circuit court did not abuse its discretion when it struck Ogunbor's second amended complaint. At the summary-judgment stage, the only viable causes of action were those raised in Ogunbor's original complaint, in which she alleged that Sears failed to prevent May from obtaining her cell phone number and using it "for personal gain." Additionally, she claimed that Sears "failed to protect" her from May, and failed to "take corrective action" against May.

¶58. Assuming all of Ogunbor's factual allegations are true, May became aware of Ogunbor because they both happened to be in Sears at the same time – one as an employee, and the other as a customer. There is no direct evidence that May is homosexual. But

22

assuming that Ogunbor's interpretation of May's behavior accurately reflected a romantic fixation, there was simply no genuine issue of material fact regarding whether May was acting in the course and scope of her employment at Sears.

¶59. "Some actions are so clearly beyond an employee's course and scope of employment that they cannot form the basis for a claim of vicarious liability, as a matter of law." *Baker*, 42 So. 3d at 488 (¶40). Conduct is within the scope of one's employment if:

> (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

*Id*. at (¶41). However, conduct "is not within the scope of [one's] employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id*. "If an employee deviates or departs from his work to accomplish some purpose of his own not connected with his employment – goes on a 'frolic of his own' – the relation of master and servant is temporarily suspended." *Id*. at 489 (¶41).

¶60. Even assuming that May clandestinely obtained Ogunbor's cell phone number from Sears, or one of her coworkers gave it to her so she could notify Ogunbor that her patio furniture had arrived, Sears could not have known that May would have further contact with Ogunbor. What is more, the conduct that Ogunbor alleged served no purpose that benefitted Sears's interests. Even if May had an unrequited interest in Ogunbor, that behavior was so clearly beyond the course and scope of her employment at Sears that as a matter of law, that alleged conduct "cannot form the basis for a claim of vicarious liability . . . ." *See id*. at

23

(¶43). What is more, Sears simply did not have a duty to supervise May when she was not working. *See id*. at (¶45).

¶61. Ogunbor essentially accused Sears of negligence. "To succeed on a claim for negligence, the plaintiff must prove duty, breach, causation[,] and injury." *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (¶30) (Miss. 2004). Whether a duty exists is a question of law. *Id*. at (¶29). Because Sears did not have a duty to prevent the conduct Ogunbor alleged, Ogunbor's claims fail as a matter of law. There is no merit to this issue.

### IV. Request for Sanctions

¶62. Ogunbor vigorously submits that this Court should sanction the trial court clerk $60,000 and terminate every employee in that office. Ogunbor's vitriol toward the trial court clerk is based on a myriad of claims that the consolidated appellate records were mishandled. Ogunbor relies on the Mississippi Supreme Court's decision in *T. Jackson Lyons & Associates P.A. v. Precious T. Martin Sr. & Associates PLLC*, 83 So. 3d 1284 (Miss. 2012). In that case, the supreme court ordered the Hinds County Circuit Clerk to pay a law firm "an amount sufficient to compensate it for the reasonable attorney fees and related costs incurred as a result of the circuit clerk's failure properly to transmit the appellate record." *Id*. at 1288 (¶12). The supreme court noted that the case was "yet another example of the recurring failures by [the] [c]ircuit [c]lerk . . . to comply with the rules of the courts of Mississippi." *Id*. at 1289 (¶13).

¶63. The circumstances of this case do not rise to the level of the circumstances in *Lyons*. Ogunbor received a refund based on pages that were duplicated in the consolidated record.

24

And there is no reasonable basis to conclude that the circuit clerk's handling of Ogunbor's numerous filings prejudiced her case in any way. The circuit court conducted two hearings – one of which lasted the majority of an entire day – to address Ogunbor's claims that the record was incomplete. Most of Ogunbor's dissatisfaction was based on the point at which various documents appeared in the record. Essentially, the circuit judge declined to modify the record so that it appeared more favorably for Ogunbor than it did when the circuit court made contemporaneous decisions. We find that Ogunbor's request for sanctions is baseless, unreasonable, and wholly without merit.

## CONCLUSION

¶64. There is no merit to Ogunbor's claim that the circuit court erred when it granted May's motion to dismiss. Likewise, the circuit court did not err when it granted the motions to strike Ogunbor's second amended complaint. And Ogunbor's vicarious-liability claims against Sears fail as a matter of law. Finally, we decline to sanction the trial court clerk. Accordingly, we affirm the circuit court's judgment.

¶65. **THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, WILSON AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**